IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ADAM LOWRY, M.D.**,

    *Plaintiff*,

v.

                                                 Case No. 6:26-cv-00919

**THE NEMOURS FOUNDATION**,
A Florida Not-for-Profit Corporation d/b/a
**NEMOURS CHILDREN'S HOSPITAL, FLORIDA**

    *Defendant*.

_____/

## DEFENDANT'S MOTION TO DISMISS COUNTS I–XII, XV, AND XVII OF PLAINTIFF'S AMENDED COMPLAINT

Defendant, THE NEMOURS FOUNDATION ("Nemours" or "Defendant"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files its Motion to Dismiss Counts I–XII, XV, and XVII (the "Nemours Counts") of the Amended Complaint (ECF No. 17) filed in this action by Plaintiff, ADAM LOWRY M.D. ("Dr. Lowry"). For the reasons stated herein, the Nemours Counts should be dismissed with prejudice.

### INTRODUCTION

Dr. Lowry's Amended Complaint fails to cure the fatal flaws inherent in his initial Complaint (ECF No. 1-2) (the "Original Complaint"); instead, it adds a litany of new incurable deficiencies and again fails to state a claim upon which relief can be granted. Dr. Lowry's Amended Complaint details his apparent

frustration with his employment as a physician at Nemours leading up to his voluntary separation. Dr. Lowry attempts to shoehorn these generalized frustrations into seventeen (17) different causes of action—fourteen (14) of which are pled against Nemours.[1] As in his Original Complaint, Dr. Lowry's purported "causes of action" are nothing more than manufactured theories of liability unsupported by any applicable law. Moreover, Dr. Lowry's reliance on impermissible legal conclusions, vague allegations, and formulaic recitations of elements fails to satisfy the plausibility standards required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For these reasons, and as further articulated below, Nemours respectfully requests that this Court dismiss the Nemours Counts in full and with prejudice.

## DR. LOWRY'S ALLEGATIONS[2]

### I.   Allegations Regarding Dr. Lowry's Employment

1.   Dr. Lowry is a physician who worked and resided in Florida during the time period relevant to his Amended Complaint. Am. Compl. ¶ 24.

2.   Nemours is a not-for-profit corporation that operates a hospital—Nemours Children's Hospital—in Orlando, Florida. *Id.* ¶ 25.

3.   Dr. Lowry worked as a Pediatric Cardiac Intensivist and Cardiac

---

[1] Because Counts XIII, XIV, and XVI are directed only at Dr. Lowry's former colleagues—Peter D. Wearden, M.D. ("Dr. Wearden") and Kelly N. Baker, D.O. ("Dr. Baker")—Nemours does not address them herein.  Neither Dr. Wearden nor Dr. Baker have been served with the Amended Complaint.
[2] Solely for the purpose of this Motion, Nemours assumes the truth of Dr. Lowry's factual allegations (but not mere conclusions) as required under the Federal Rules of Civil Procedure.

Intensive Care Physician at Nemours from September 29, 2017, until his resignation in May of 2025. *Id.* ¶¶ 2–3. During this time, he also worked as the Medical Director of Clinical Informatics for the Nemours Cardiac Center. *Id.* ¶ 2.

4. Among other things, Dr. Lowry was responsible for providing cardiac intensive care to pediatric patients at Nemours, including those with congenital cardiac disease. *Id.* ¶ 34. Dr. Lowry describes his position as "a highly specialized physician role." *Id.*

## II. Allegations Regarding The "Governing" Alleged Written Contract Documents

5. Dr. Lowry claims that his compensation, work obligations, paid time off ("PTO"), and reimbursement of professional expenses were "governed" by: (1) a May 5, 2017 employment offer (the "Employment Offer") (attached as Exhibit A to the Original Complaint); (2) a December 24, 2020 compensation memorandum (the "Compensation Memo") (attached as Exhibit B to the Original Complaint); and (3) a December 27, 2020 Memorandum of Understanding (the "MOU") (attached as Exhibit B to the Original Complaint). *Id.* ¶ 5.[3]

6. The Employment Offer established a base salary of $270,000.00, benefits, and eligibility for incentive bonuses. *Id.* ¶ 41; Compl. at Ex. A.

7. The Employment Offer expressly noted that Dr. Lowry was employed at-will, and that his duties could change depending on funding and Nemours'

---

[3] Dr. Lowry also vaguely refers to "Nemours policies" that he contends governed his employment. *Id.* ¶ 5. However, Dr. Lowry identifies no specific policy or provision thereof that is applicable to his claims in this lawsuit. *See generally* Am. Compl.

needs. Am Compl. ¶ 44; Compl. at Ex. A.

8.      The Compensation Memo raised Dr. Lowry's base salary to $295,000.00 (effective January 1, 2021), with total compensation potential of up to $324,500.00. Am. Compl. ¶¶ 57–58; Compl. at Ex. B.

9.      The MOU documented a discussion amongst Dr. Lowry's department regarding the shift expectations for full-time physicians. Compl. at Ex. B. As Dr. Lowry notes, the MOU set forth "guidelines" applicable to shift scheduling for full-time physicians. Am. Compl. ¶ 62.

10.     The MOU indicated that Dr. Lowry was generally expected to cover a minimum of eleven shifts per month.  Compl. at Ex. B; Am. Compl. ¶¶ 64–66. The MOU also indicated that Dr. Lowry could be required to work, and in some instances could request to work, additional "moonlighting shifts," and would be paid at an agreed-upon rate for such shifts. Compl. at Ex. B.

11.     The Employment Offer, the Compensation Memo, and the MOU— the terms of which speak for themselves—do not refer to or otherwise address Dr. Lowry's entitlement to PTO, the reimbursement of professional expenses, "backup obligations," "standby work," or "off-the-clock" work.

### III.    Allegations Regarding Purported "Unpaid" Work Time

12.     Dr. Lowry alleges that, because of changing demand at Nemours, he became subject to "backup obligations" or "backup assignments"[4] during which he

---

[4] Sometimes referred to throughout Dr. Lowry's Amended Complaint as "standby" obligations or "standby coverage." *See, e.g.*, Am. Compl. ¶ 7, 123, 127.

alleges he was required to "remain[] continuously available" and was subject to call-in requirements. Am. Compl. ¶ 83, 100.

13.    Dr. Lowry alleges that he was subject to approximately 119 "uncompensated" "backup assignments" between February 1, 2024 and May 31, 2025. Am. Compl. ¶ 100. Dr. Lowry does not allege that he was required to perform work during any of the alleged 119 "backup assignments." *Id.*

14.    Dr. Lowry identifies no contract, agreement, or understanding—written, oral, or otherwise—indicating that he was to receive any compensation beyond his base salary for "backup obligations" or "backup assignments."

15.    Dr. Lowry further alleges that, either before or after his shifts, he completed "off-the-clock" work (e.g., pre-shift documentation, patient review, handoffs, and communication) that he was not compensated for.[5] *Id.* ¶¶ 76–78.

16.    Dr. Lowry identifies no contract, agreement, or understanding—written or oral—indicating that he was to receive any compensation beyond his base salary for "off-the-clock" work or for "pre-shift" or "post-shift" work.

## IV.    Allegations Regarding Allegedly Unpaid PTO And Expenses

17.    Dr. Lowry claims that "Nemours denied [him] the practical ability to use earned paid time off ("PTO")" because he was required to work more shifts than he originally anticipated and because he was required to take on "backup

---

[5] Dr. Lowry provides no specific allegations as to what "post-shift" work he allegedly completed. *See generally* Am. Compl.

obligations." *Id.* ¶ 8, 87, 88.

18.    Dr. Lowry claims that, at the time of his separation, he was "entitled" to 815.5 hours of PTO—320 hours of accrued PTO, 305.8 hours of "excess" PTO (a concept Dr. Lowry does not explain), and 189.70 hours of "forfeited" PTO (which he claims he was not permitted to use). *Id.* ¶ 247.

19.    Dr. Lowry also alleges that Nemours failed to reimburse him for $972.23 in Continuing Medical Education ("CME") expenses. *Id.* ¶¶ 117, 250.

## V.    Allegations Regarding Dr. Lowry's Purported "Complaints" And His Employment Separation

20.    In vague and conclusory terms, Dr. Lowry alleges that during his employment he "complain[ed], object[ed], or otherwise rais[ed] concerns regarding uncompensated work, unpaid compensation, required work time, backup and standby obligations, off-the-clock work, PTO practices tied to compensation, and Nemours' failure to pay compensation owed for work performed." *Id.* ¶ 195.

21.    Dr. Lowry contends that Nemours "retaliated" against him by "increasing, maintaining, or refusing to remedy excessive workload demands; denying or frustrating PTO; imposing or continuing uncompensated backup and standby obligations; treating him inequitably; verbally harassing him; threatening termination; and creating working conditions that a reasonable person in Dr. Lowry's position would have found objectively intolerable." *Id.* ¶ 197.

22.    Dr. Lowry further alleges—again in vague and conclusory terms—that he raised concerns regarding "unsafe or unsustainable staffing, excessive workload,

patient-safety risks, inability to take meaningful time away from work, uncompensated work practices, and management practices that discouraged physicians from voicing concerns in a healthcare setting." *Id.* ¶ 204.

23.    Dr. Lowry alleges that Nemours retaliated against him by "imposing excessive workload, denying or frustrating PTO, continuing uncompensated backup and standby requirements, subjecting him to verbal harassment or threats, treating him inequitably, and creating intolerable working conditions." *Id.* ¶ 206.

24.    Dr. Lowry alleges that as a result of Nemours' alleged "retaliation" he was constructively discharged. *Id.* ¶¶ 198, 207.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") challenges the legal sufficiency of a complaint on its face. *Johnson v. Fleet Fin. Inc.*, 785 F. Supp. 1003, 1005 (S.D. Ga. 1992). "When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed" and must accept all well-pleaded factual allegations as true. *McArdle v. City of Ocala*, 418 F. Supp. 3d 1004, 1006 (M.D. Fla. 2019) (citing *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Moreover, "'the tenet that a court must accept as true all of the

7

allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (stating that a complaint does not suffice where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). To this end, "the Court may dismiss a claim when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," or when a plaintiff's well-pleaded factual allegations, taken as true, fail to establish entitlement to relief. *Conyers v. Ayers*, 5:22-cv-115, 2023 WL 5533504, at *1 (M.D. Fla. July 20, 2023) (internal quotations omitted).

## MEMORANDUM OF LAW

### I.  Count I: Dr. Lowry's Breach of Written Contract Claim Must Be Dismissed.

Dr. Lowry alleges that the Employment Offer, the Compensation Memo, the MOU,[6] and various unspecified "Nemours policies" together constitute "valid and

---

[6] Because Dr. Lowry attaches the Employment Offer, Compensation Memo, and MOU to his Original Complaint and references them throughout his Amended Complaint, the Court may consider these documents alongside Dr. Lowry's allegations. *See Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).

enforceable written employment documents." Am. Compl. ¶ 110. Dr. Lowry further contends that Nemours breached these alleged "written employment documents" by: (a) requiring Dr. Lowry to perform "uncompensated" "backup, standby, additional clinical, pre-shift, post-shift, off-the-clock, and patient care work"; (b) failing to "permit meaningful use of PTO"; (c) failing to pay "earned, accrued, excess, or forfeited PTO upon separation"; (d) failing to reimburse required CME expenses;  and (e) "implementing the MOU in a manner inconsistent with its stated purpose." *Id.* ¶¶ 116–118.  Fatal to Dr. Lowry's claims, however, is his failure to identify any valid contract governing these supposed disputes at issue.  *See Deauville Hotel Mgmt., LLC v. Ward*, 219 So.3d 949, 953 (Fla. Dist. Ct. App. 2017) (explaining breach of contract claim requires proof of a valid contract governing the dispute at issue).

### A.    Nemours' Policies Do Not Constitute An Enforceable Contract.

As an initial matter, "[u]nder Florida law, policy statements by an employer do not give rise to enforceable contract rights of employees without the parties' explicit mutual consent." *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (dismissing plaintiff's breach of contract claim and stating that an employment policy "whether stated orally or given to the plaintiff in handbook form, does not create an enforceable and independent contract right against the defendant."); *see also OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115, 1123 (M.D. Fla. 2007) ("It is 'well established Florida law that

policy statements in employee manuals do not give rise to enforceable contract rights . . . unless they contain specific language which expresses the parties' mutual agreement that the manual constitutes a separate employment contract.'" (quoting *Walton v. Health Care Dist. of Palm Beach Cnty., Fla.*, 862 So. 2d 852, 855–56 (Fla. Dist. Ct. App. 2003)). Accordingly, to the extent Dr. Lowry's breach of contract claim is based on "Nemours' policies," his claim fails on this basis.

> **B.    The Employment Offer, Compensation Memo, And MOU Do Not Govern The Substance Of Dr. Lowry's Claim.**

The Employment Offer, Compensation Memo, and MOU also cannot serve as the basis for Dr. Lowry's claim. Despite Dr. Lowry's assertions, the Employment Offer, Compensation Memo, and MOU do not contain provisions regarding "backup" or "standby" work, "pre-shift, post-shift, [or] off-the-clock" work, PTO accrual and payout, or reimbursement of professional expenses.[7] The Employment Offer and Compensation Memo cover Dr. Lowry's salary, and the MOU covers compensation for moonlighting shifts. *See* Compl. at Ex. A, Ex. B. Because the documents Dr. Lowry identifies do not contain provisions governing his claims, Dr. Lowry has not pled the existence of a valid contract as to these issues. *See Celestine v. Capital One*, 741 F. App'x 712, 713 (11th Cir. 2018) ("Where

---

[7] The MOU only refers to payment for "moonlighting shifts," which are separate and distinct from "backup obligations." Compl. at Ex. B. As the MOU contemplates, a moonlighting shift is an actual shift **worked** by a physician. *Id.* These are distinct from any so-called "backup" assignment, which Dr. Lowry's own allegations admit only involved him being "available." Am. Compl. at ¶¶ 83, 100. Again, the MOU does not mention, refer to, or otherwise provide Dr. Lowry with any expectation of additional compensation for any kind of "backup" or on-call work similar to that described by Dr. Lowry.

exhibits are submitted that contradict the alleged facts, the exhibits control, despite our construction of facts in favor of their truth.").

Dr. Lowry's contention that Nemours did not implement the MOU in a manner consistent with its purpose does not constitute a breach of contract. Dr. Lowry conflates aspirational principles underlying the MOU (i.e., "burnout prevention," "physician job satisfaction," etc.) with enforceable contractual obligations. But Dr. Lowry even concedes—as he must—that the MOU set forth "guidelines," not binding contractual obligations. Am. Compl. ¶ 62. For these reasons and those detailed above, Dr. Lowry's breach of contract claim must be dismissed with prejudice. *See, e.g.*, *Myers v. Provident Life & Accident Ins. Co.*, 564 F. Supp. 3d 1157, 1184 (M.D. Fla. 2021) (dismissing claim where plaintiff "fail[ed] to plead all of the essential elements of [his claim]").

**II.     Count II: Dr. Lowry's Breach of Oral Contract Claim Must Be Dismissed.**

In the alternative to Count I, Dr. Lowry attempts to assert a claim for breach of oral, as opposed to written, contract. To establish the existence of an oral contract under Florida law, "a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kolodziej v. Mason*, 774 F.3d 736, 740–41 (11th Cir. 2014) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)).

Dr. Lowry fails to plead any specific "offer" on the part of Nemours and fails to identify the essential terms of the alleged "oral agreement" he contends Nemours

11

breached. *See generally* Am. Compl. In other words, Dr. Lowry does not identify who made the alleged oral offers, when they were made, or what their specific terms were. *Id.* Instead, Dr. Lowry imprecisely alleges that "Nemours, through authorized representatives and program leadership, entered into oral agreements and mutual understandings with Dr. Lowry concerning additional compensation, moonlighting compensation, backup coverage, standby obligations, equitable workload distribution, PTO use, physician time away from work, and reimbursement for professional expenses." Am. Comp. ¶ 123. These vague, indefinite allegations are insufficient to establish the existence of an oral contract, and thus, are insufficient to state a plausible claim for relief.  *See, e.g.*, *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) ("Under Florida law, a claim for breach of an oral contract arises only when the parties 'mutually assented to a **certain and definite** proposition and left no essential terms open.'" (emphasis added) (quoting *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. Dist. Ct. App. 2000)).

### III.    Count III: Dr. Lowry's Breach of Implied-In-Fact Contract/Course of Dealing Claim Must Be Dismissed.

"A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So.2d 383, 385 (Fla. Dist. Ct. App. 1997) (citing 17 Am.Jur.2d "Contracts" § 3 (1964)). To determine whether an implied-in-fact contract exists,

courts "examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.* Critically, "contracts implied in fact"—like all contracts—"rest upon the assent of the parties." *Id.* (quoting *Policastro v. Myers*, 420 So. 2d 324, 326 (Fla. Dist. Ct. App. 1982)). "Common examples of contracts implied in fact are where a person performs services at another's request, or 'where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances' fairly raising the presumption that the parties understood and intended that compensation was to be paid." *Id.* at 387 (quoting *Lewis v. Meginniss*, 12 So. 19, 21 (1892)).

Dr. Lowry's implied-in-fact contract claim is pled in a conclusory and confusing fashion such that it is impossible to discern what he contends he and Nemours implicitly agreed to. As Nemours understands it, Dr. Lowry alleges that Nemours implicitly agreed to: (a) pay him an amount in excess of his stated salary for "backup or standby work"; (b) not deny his PTO requests; and (c) to reimburse him for his CME expenses. Am. Compl. ¶ 131. But Dr. Lowry's own allegations belie such a conclusion. For example, if the Court accepts as true that Dr. Lowry consistently performed "backup work" without additional compensation **for several years**, it is illogical and unreasonable to conclude Dr. Lowry and Nemours had a mutual understanding that Dr. Lowry was, in fact, to be provided additional compensation for that time. The parties' course of conduct actually reveals the **opposite** understanding (i.e., that Dr. Lowry was **not** to be provided compensation

13

in excess of his base salary for "backup" work). The Amended Complaint includes **no** facts from which this Court could conclude that Nemours assented (even implicitly) to the agreements Dr. Lowry dreams up. Because Dr. Lowry's allegations do not "rais[e] the presumption that the parties understood and intended that compensation was to be paid" and do not establish the existence of an implied-in-fact contract, the Court should dismiss Count III with prejudice. *Commerce P'ship 8098 Ltd. P'ship*, 695 So.2d at 387.

## IV. Count IV: Dr. Lowry's Breach of Implied Covenant of Good Faith And Fair Dealing Claim Must Be Dismissed.

Florida law recognizes an "implied covenant of good faith and fair dealing in every contract." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). "A duty of good faith must . . . 'relate to the performance of an *express* term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach[.]'" *Id.* at 1235 (emphasis in original) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998)). Dr. Lowry asserts in conclusory terms that Count IV "is tied specifically to express contractual terms . . . in the written employment documents, MOU, policies, and compensation framework." Am. Compl. ¶ 142. Tellingly, however, Dr. Lowry identifies no express contractual term he believes Nemours was obligated to perform. *See* Am. Compl. ¶¶ 139–46. Instead, Dr. Lowry acknowledges that Nemours had discretion to make decisions regarding physician scheduling, PTO, workload distribution, etc. Am. Compl. ¶¶ 140.

14

Accordingly, Dr. Lowry's claim fails. *Ins. Concepts & Design, Inc.*, 785 So. 2d at 1235 ("The duty of good faith does not attach until the Plaintiff can establish a term of the contract that [the Defendant] was obligated to perform.").

## V.     Count V: Dr. Lowry's Declaratory Judgment Claim Must Be Dismissed.

Dr. Lowry attempts to state a claim for declaratory judgment under 28 U.S.C. § 2201. "That statute, however, does not provide an independent cause of action or theory of recovery." *See Foley v. Orange Cty.*, No. 6:12-cv-269, 2012 WL 6021459, at *8 (M.D. Fla. Dec. 4, 2012). Courts confronted with the "not infrequent mistake of [plaintiffs] characterizing declaratory judgment as claim in itself" routinely dismiss plaintiffs' attempts to bring claims for declaratory judgment. *Burke v. Johnson*, No. 6:16-cv-199, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016); *see also Washington v. PNC Bank, Nat. Ass'n.*, No. 8:25-cv-2898, 2026 WL 1858429, at *3 (M.D. Fla. June 29, 2026) ("Declaratory judgment is not a cause of action; it is a remedy."); *Doe v. Azar*, No. 6:19-cv-2074, 2020 WL 13349092, at *4 (M.D. Fla. May 20, 2020) ("The Declaratory Judgment Act does not provide an independent cause of action or theory of recovery."); *Absolute Training Syndicate v. Your Instructor, LLC*, No. 8:25-cv-1978, 2025 WL 3250968, at *2 (M.D. Fla. Nov. 21, 2025).  Count V should thus be dismissed with prejudice.

## VI.    Count VI: Dr. Lowry's Promissory Estoppel Claim Must Be Dismissed.

To state a claim for promissory estoppel, a plaintiff must establish: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2)

15

a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. Dist. Ct. App. 2005). Courts apply the doctrine of promissory estoppel only where the representation at issue is "definite" as to time, terms, and reasonableness. *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 925 (Fla. 1989).

Dr. Lowry's claim fails because he (again) fails to identify any specific representation made by Nemours that he relied upon to his detriment. Rather, he claims in general terms that Nemours made promises to him "concerning compensation, additional shifts, moonlighting rates, PTO, time off, workload balancing, burnout prevention, patient safety, and reimbursement of professional expenses." Am. Compl. ¶ 157. To apply the promissory estoppel doctrine to this vague and undefined group of general topics would impermissibly "wreak havoc with basic contract law." *W.R. Grace & Co.*, 547 So. 2d at 925. As such, Dr. Lowry's promissory estoppel claim should be dismissed with prejudice.

## VII.   Count VII: Dr. Lowry's Unjust Enrichment Claim Must Be Dismissed.

The fact that Dr. Lowry (a physician who was exempt from the minimum wage and overtime requirements of the FLSA, *see* Section X, *infra*) was paid a salary precludes his unjust enrichment claim. To establish a claim for unjust enrichment, a plaintiff must show that: (1) the plaintiff "conferred a benefit on the defendant, who has knowledge thereof; (2) [the] defendant voluntarily accept[ed] and

16

retain[ed] the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Doral Collision Ctr., Inc. v. Daimler Trust*, 341 So. 3d 424, 429 (Fla. Dist. Ct. App. 2022) (quoting *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So.3d 689, 693 (Fla. Dist. Ct. App. 2018)).

Dr. Lowry's claim for unjust enrichment hinges on his allegation that he conferred a benefit on Nemours "by providing additional clinical services, backup coverage, standby availability, patient-care services, pre-shift and post-shift work, administrative services, informatics services, quality-improvement work, and other professional services" to Nemours and by remaining available during his so-called "backup" assignments. Am. Compl. ¶¶ 166–67. The "benefits" Dr. Lowry lists are the core duties of his role as a physician at Nemours, for which he was paid a salary. Dr. Lowry does not allege, nor can he, that Nemours ever failed to provide this salary. Instead, Dr. Lowry's claim is based on his belief that he should have been paid more for the work he did for Nemours. This belief cannot support a claim for unjust enrichment, lest every disgruntled employee unhappy with their salary take to the court system to demand more.

Under similar facts, courts have held that "the law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011), aff'd, 503 F. App'x 62

17

(2d Cir. 2012); *see e.g.*, *Middleton v. Int'l Bus. Machines Corp.*, 787 F. App'x 619, 624 (11th Cir. 2019)[8] (affirming dismissal of unjust enrichment claim because "IBM did compensate Middleton for his work on the Delta sale, through his base salary and through commission pay" and holding that "as a matter of law, Middleton cannot claim otherwise" to support a claim for unjust enrichment); *Denarii Sys., LLC v. Arab*, No. 12-24239-CIV, 2013 WL 500826, at *5 (S.D. Fla. Feb. 11, 2013) (dismissing unjust enrichment claim with prejudice when plaintiff "fail[ed] to allege additional benefit(s) defendant…conferred upon the plaintiff outside of his duties as a salaried employee"); *Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV, 2009 WL 5031345, at *6 (S.D. Fla. Dec. 15, 2009).  Thus, because Dr. Lowry was paid a salary for his work as a physician at Nemours, his claim for unjust enrichment fails as a matter of law and should be dismissed with prejudice.

## VIII.  Count VIII: Dr. Lowry's Quantum Meruit Claim Must Be Dismissed.

Dr. Lowry's quantum meruit claim fails for the same reason as his unjust enrichment claim—namely, he was compensated (via his six-figure salary that increased over the course of his employment) for the services he provided to Nemours. *Deepgulf, Inc. v. Moszkowski*, No. 3:18cv1466, 2020 WL 4577716, at *5 (N.D. Fla. Jan. 27, 2020) (holding that, under Florida law, a claim for quantum meruit is foreclosed where "there [was] an express agreement addressing [the

---

[8] Dr. Lowry cites to *Middleton* to support the proposition that "a claim for unjust enrichment where . . . the services alleged to be uncompensated are separate and distinct from those for which a salary was paid and go beyond the scope of baseline salaried employment duties." Am. Compl. ¶ 168. *Middleton* does not stand for this proposition or anything similar.

claimant's] salary"). In this case, the Employment Offer and later Compensation Memo clearly set forth the terms of Dr. Lowry's salary as a physician with Nemours. As a result, Count VIII must be dismissed with prejudice.

## IX. Count IX: Dr. Lowry's Claim for Unpaid Wages and Compensation Under Florida Law Must Be Dismissed.

Dr. Lowry purports to bring a claim for "unpaid wages" pursuant to Fla. Stat. § 448.08. Am. Compl. ¶¶ 179–84. However, "Section 448.08 does not create a cause of action" for unpaid wages, but rather, provides for an award of costs and reasonable attorneys' fees to the prevailing party in action for unpaid wages "brought pursuant to some other law." *Coleman v. JCS Investigations & Security, LLC*, No. 8:24-cv-2607, 2025 WL 2694990, at *2 (M.D. Fla. Aug. 28, 2025). Florida courts "construe wage claims asserted under [S]ection 448.08 as claims arising under Florida common law. . . 'Under Florida common law, a plaintiff can recover unpaid wages under a breach of contract theory.'" *Alarcon v. Shiseido Travel Retail Ams., Inc.*, No. 18-21006, 2018 WL 3059648, at *2 (S.D. Fla. June 19, 2018) (quoting *Alfonso v. Care First Med. Ctr. Inc.*, No. 14-22717-CIV, 2015 WL 1000983, at *3 (S.D. Fla. Mar. 4, 2015)). Accordingly, to the extent this Court construes Count IX as a claim for unpaid wages under Florida common law, it should be dismissed with prejudice for the same reasons set forth above with respect to Counts I and II. Dr. Lowry points to no "other law" entitling him to the undefined "wages" he contends he is owed (and no such law exists).

19

**X.      Count X: Dr. Lowry's FLSA Claim for Unpaid Compensable Work Must Be Dismissed.**

Dr. Lowry's assertion that Nemours failed to pay him for "all compensable work" does not constitute a claim for relief under the FLSA. To establish a claim under the FLSA, a plaintiff must show that: (1) he "was employed by an employer covered by the FLSA during the time period involved;" (2) he "was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce;" and (3) "the employer failed to pay the plaintiff the minimum wage and overtime compensation required by law." *May v. Steak N Shake Ops., Inc.*, No. 3:14-cv-912-J-32JRK, 2014 WL 7251637, at *1 (M.D. Fla. Dec. 18, 2014) (quoting K*wasnik v. Charlee Fam. Care Servs. of Cent. Fla., Inc.*, 608-cv-926, 2009 WL 1607809, at *4 (M.D. Fla. June 9, 2009)). As an initial matter, Dr. Lowry does not specifically allege that Nemours failed to pay him minimum wage or overtime compensation, he merely says that Nemours failed to compensate him for "all compensable work time." See Am. Compl. ¶ 190; *see Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008) (noting that "to state a claim of a FLSA violation . . . [t]he elements that must be shown are . . . a failure to pay overtime compensation and/or minimum wages to covered employees") Thus, because Dr. Lowry has not claimed any actual violation of the FLSA, his claim should be dismissed on this basis alone.

Even if he had alleged a minimum wage or overtime violation, however, any such claim would fail because Dr. Lowry—a practicing physician—was exempt

20

from the minimum wage and overtime requirements of the FLSA. As the Eleventh Circuit has noted "Congress . . . removed certain employees from FLSA coverage." *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016). "Whether an employee meets the criteria for an FLSA exemption, although based on the underlying facts, is ultimately a legal question. *Id.* (citing *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965–66 (11th Cir. 1997)). As relevant here, this Court has stated that:

> The FLSA expressly exempts employees who are "employed in a bona fide . . . professional capacity." See 29 U.S.C. § 213(a)(1). . . . The Department of Labor has defined the term "employee employed in a bona fide professional capacity" to include "[a]ny employee who is the holder of a valid license or certificate permitting the practice of . . . medicine . . . and is actually engaged in the practice thereof." 29 C.F.R. 541.304(a)(1). See, generally, *Okonkwo v. The Callins Law Firm, LLC*, 668 Fed.Appx. 875, 876 (11th Cir. 2016). "In the case of medicine, the exemption applies to physicians and other practitioners licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners. The term "physicians" includes medical doctors[.] . . . " 29 C.F.R. § 541.304(b).

*Brown v. Suncoast Skin Sols., Inc.*, No. 6:17-cv-515, 2017 WL 2361649, at *3 (M.D. Fla. Apr. 26, 2017).

In his Complaint, Dr. Lowry alleges that he "is a physician." Compl. ¶¶ 2–3, 24, 34–35. Further, he alleges that he was employed by Nemours as "a highly specialized pediatric cardiac intensivist" and that he was responsible for providing medical care to "critically ill pediatric patients, including children with congenital cardiac disease" Compl. ¶¶ 2, 34–35. Because Dr. Lowry "has pled that []he was employed as a medical doctor for the purpose of providing [medical] services, []he

comes squarely within the unambiguous language of the [bona fide professional] exemption" to the FLSA. *Brown*, 2017 WL 2361649, at *3.[9] Thus, his FLSA claim should be dismissed with prejudice. *Id.* (holding plaintiff, who alleged she was a medical doctor providing dermatology services, exempt and dismissing FLSA claims without leave to amend).

## XI.   Count XI: Dr. Lowry's FLSA Retaliation Claim Must Be Dismissed.

To establish a claim for retaliation under the FLSA, Dr. Lowry must show that: (1) he engaged in FLSA-protected activity; (2) he subsequently suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000). Dr. Lowry fails to sufficiently plead any of the three required elements.

### A.   Dr. Lowry Did Not Engage In FLSA-Protected Activity.

"To fall within the scope of the [FLSA's] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of content and context, as an assertion of rights protected by the statute and a call for their protection." *Keith v. Univ. of Miami*, 437 F. Supp. 3d

---

[9] Dr. Lowry's assertion that the above-described exemption "does not apply to all categories of compensable time at issue" is meaningless. An exempt employee does not transform into a non-exempt employee merely because they perform some non-exempt work. *See, e.g.*, *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1268 (11th Cir. 2008) ("[A]n employee's performance of nonexempt work does not preclude the exemption if the employee's primary duty remains [exempt work].") U.S. Dep't of Lab, Wage & Hour Div., *Opinion Letter FLSA2026-5* (May 28, 2026). There is no dispute that Dr. Lowry's primary duty at Nemours was providing medical care to pediatric patients, and as such, he is exempt.

1167, 1172–73 (S.D. Fla. 2020) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S. Ct. 1325, 1329 (2011)). Dr. Lowry vaguely claims that he "complain[ed], object[ed], or otherwise rais[ed] concerns regarding uncompensated work, unpaid compensation, required work time, backup and standby obligations, off-the-clock work, PTO practices tied to compensation, and Nemours' failure to pay compensation owed for work performed." Am. Compl. ¶ 195. Dr. Lowry does not identify who he allegedly raised these concerns to, when, or what he allegedly said. *See generally* Am. Compl. Dr. Lowry's vague allegations fail to meet the plausible pleading requirements of *Twombly* and *Iqbal*, and his alleged complaints—even taken as true—are not sufficiently clear or detailed to constitute protected activity under the FLSA. *Keith*, 437 F. Supp. 3d at 1172–73.

What's more, because Dr. Lowry was unequivocally exempt from the FLSA's protections, he cannot show that he engaged in protected activity because any belief that Nemours violated the FLSA as to him would have been objectively unreasonable. To assert an FLSA retaliation claim "[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record present." *Kaplan v. Burrows*, No. 6:10-cv-95-Orl-25DAB, 2011 WL 13298585, at *5 (M.D. Fla. 2011) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997) (emphasis in original)). "'[I]t is presumed that the employee has substantive knowledge of the law' when

23

applying the objective reasonableness test." *Langston v. Lookout Mountain Cmty. Servs.*, No. 4:16-cv-00239, 2017 WL 6612866, at *14 (N.D. Ga. Oct. 11, 2017) (quoting *Padilla v. The North Broward Hosp. Dist.*, 270 F. App'x 966, 970 (11th Cir. 2018)).

As noted in Section X, *supra*, as a practicing medical doctor, Dr. Lowry was clearly and unequivocally exempt from the FLSA's protections. Courts in the Eleventh Circuit routinely hold that when a plaintiff is clearly exempt from the FLSA's protections, a complaint that the plaintiff's employer violated the FLSA is objectively unreasonable (and therefore not protected activity). *See, e.g.*, *Keith*, 437 F. Supp. 3d at 1173 ("Where, as here, Plaintiff was explicitly exempt and therefore not covered by the FLSA, the court concludes no reasonable employer, given the context and content, could have perceived her complaint as a genuine assertion of rights under the FLSA. . . . Moreover, Plaintiff points to no case, and the Court has not on its own identified any, in which an employee clearly and explicitly exempted from FLSA coverage has successfully raised an FLSA retaliation claim. Because Plaintiff is explicitly exempt and therefore not covered by the FLSA, Plaintiff's cause of action under the FLSA is futile."); *Kaplan*, 2011 WL 13298585, at *6 ("Because Plaintiff was not a protected individual under the FLSA at the time he lodged his complaint and could not have reasonably believed he was a protected employee and, therefore, engaged in protected activity at that time, the Court finds that Plaintiff has failed to establish a prima facie case for retaliation."); *Langston*,

24

2017 WL 6612866, at *15 ("[I]t is clear that plaintiff was properly classified as an exempt executive. . . . Thus, even assuming plaintiff subjectively believed that she was entitled to overtime compensation and made that complaint to [her employer], any such belief was not objectively reasonable. . . . Plaintiff's FLSA retaliation claim thus fails because she has not established the first element of her prima facie case, i.e., that she engaged in protected activity."); *Estate of Roig v. United Parcel Serv.*, No. 20-CV-60811, 2020 WL 6875790, at *21 (S.D. Fla. Sept. 30, 2020) ("[A]ny wage complaints by [plaintiff] were not objectively reasonable because of his evident exempt status, meaning [plaintiff] did not engage in protected activity."); *see also Schneider v. Scottsdale Unified Sch. Dist. No. 48*, No. CV-21-01521, 2022 WL 901418, at *7 (D. Ariz. Mar. 28, 2022) (dismissing plaintiff's FLSA retaliation claim and finding that "Plaintiff's exempt status precludes her from showing that she reasonably believed that Defendant's alleged conduct was unlawful. Plaintiff's Amended Complaint pleads facts supporting that she may have honestly and in good faith believed that she was entitled to be paid and that Defendant's refusal to do so was unlawful. However, even accepting these facts as true and construing them in Plaintiff's favor, as this Court is required to do on a motion to dismiss, the fact remains that the FLSA explicitly exempts her from the wage and hour provisions."). Consequently, Dr. Lowry's FLSA retaliation claim must be dismissed because he did not engage in protected activity, and because of his clear exempt status, could not possibly have done so.

25

**B.    Dr. Lowry Cannot Establish An Adverse Employment Action Or A Causal Connection Sufficient To Support A Retaliation Claim.**

Dr. Lowry's FLSA retaliation claim also fails on prongs two and three because he fails to plausibly plead both adverse employment action and a causal connection to his alleged protected activity. Dr. Lowry alleges that Nemours retaliated against him for raising the above-referenced vague concerns by "increasing, maintaining, or refusing to remedy excessive workload demands; denying or frustrating PTO; imposing or continuing uncompensated backup and standby obligations; treating him inequitably; verbally harassing him; threatening termination; and creating working conditions that a reasonable person in Dr. Lowry's position would have found objectively intolerable." Am. Compl. ¶ 197. Dr. Lowry also baselessly claims that his voluntary resignation "constituted a retaliatory constructive discharge." Am. Compl. ¶ 198. He describes the conditions leading to his alleged "constructive discharge" as "uncompensated work demands, compensation disputes, PTO restrictions, adverse scheduling practices, threats, and retaliatory responses." *Id.*

Dr. Lowry's general and conclusory allegations cannot sustain his claim. He fails to identify **any** specific employment decision that he claims was made in response to his alleged complaints. *See generally* Am. Compl; *see also Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188 ("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."). He concludes that "Nemours knew" of his alleged protected activity (Am. Compl. ¶

196) and that the alleged "adverse actions" were "causally related" to such alleged activity (Am. Compl. ¶ 199) but pleads no specific facts in support of either conclusion. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, he explicitly acknowledges that the majority of the alleged "adverse" actions detailed above occurred before (or were in progress prior to) his alleged "complaints" (e.g., "maintaining," "refusing to remedy," "continuing" etc.), precluding any finding of causation. *Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 640 (11th Cir. 2021) (emphasis in original) ("[I]f the alleged retaliatory conduct occurred <u>before</u> the employee engaged in protected activity, the two events cannot be causally connected.").

With respect to his constructive discharge contention, "[w]hether a 'constructive discharge' qualifies as an 'adverse employment action' under the FLSA remains an open question [in the Eleventh Circuit]." *Garrido v. Pro Servs. Grp., LLC*, No. 9:24-cv-80027, 2024 WL 5056997, at *4 (S.D. Fla. Aug. 7, 2024). Even if the Eleventh Circuit recognizes such a theory, Dr. Lowry's allegations are woefully inadequate to establish constructive discharge. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. . . In assessing constructive discharge claims, [the Court does] not consider a plaintiff's subjective feelings about his employer's actions, but whether a reasonable person in the plaintiff's position

would be compelled to resign." *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-23859-CIV, 2015 WL 2374594 at \*9 (S.D. Fla. May 18, 2015) (internal citations omitted). "The threshold for establishing constructive discharge is 'quite high.'" *Tzoc*, 2015 WL 2374594, at \*12 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)). A plaintiff must show "a high degree of deterioration in [his] working conditions, approaching the level of 'intolerable'" and such deterioration must be causally linked to plaintiff's alleged protected activity. *Id.* (quoting *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991); *Wolf*, 200 F.3d at 1343; *see also Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353, 1358–59 (M.D. Fla. Oct. 22, 2014) ("In order to sufficiently allege a constructive discharge, the harassing behavior must be so severe and pervasive that it alters the conditions of plaintiff's employment.").

Dr. Lowry's generalized allegations of "uncompensated work demands, compensation disputes, PTO restrictions, adverse scheduling practices, threats, and retaliatory responses" do not approach the level of "intolerable" conditions required to support a constructive discharge claim, and as noted *supra*, cannot be causally linked to Dr. Lowry's (non-existent) alleged protected activity. *Moore v. San Carlos Park Fire Protection & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020) (affirming dismissal of plaintiff's constructive discharge claim where plaintiff's allegations were "extremely vague; most [did] not reference specific dates or circumstances in which the allegedly discriminatory acts occurred" and where

28

plaintiff alleged numerous discriminatory acts "without mentioning perpetrators or dates when these acts occurred."); *Suber v. Cancer Treatment Ctrs. of Am. Global, Inc.*, No. 3:21-cv-3, 2022 WL 22867439, at *4 (N.D. Ga. Jan. 26, 2022) (dismissing constructive discharge claim where plaintiff alleged she was denied a promotion, demoted, stripped of meaningful work duties, and suffered a four-year "step backwards" in her career and "an extreme loss of prestige"). Accordingly, and in addition to the reasons set forth in Section XI(A), *supra*, because Dr. Lowry also fails to plead specific facts in support of prongs two or three of his *prima facie* case, his FLSA retaliation claim must be dismissed.

## XII. Count XII: Dr. Lowry's Private Sector Whistleblower Act Claim Must Be Dismissed.

In Count XII, Dr. Lowry purports to state a claim under the Florida Private Sector Whistleblower Act, §§ 448.102, 448.103 (the "FWA"). To establish a *prima facie* case under the FWA, a plaintiff must first prove that an **actual violation** of a law, rule, or regulation occurred; an employee's reasonable belief that his employer has violated a law is not sufficient. *See Gessner v. S. Co.*, No. SC2024-1835, 2026 WL 1488160, at *7 (Fla. May 28, 2026) (holding that "to survive a motion to dismiss for a section 448.102(3) claim, an employee must plead ultimate facts about the employer's 'activity, policy, or practice' that, if proven, *would be in violation of law*" and that "[a] plaintiff must establish each textual element [of his claim] by a preponderance of the evidence, including the fact that the activity, policy, or practice to which he or she objected *is, by definition, in violation of a law*" (emphasis

29

added)); *see also U.S. ex rel. Vargas v. Lackmann Food Service, Inc.*, 510 F. Supp. 2d 957, 968 (M.D. Fla. 2007). Dr. Lowry alleges that he "objected" to practices he "reasonably believed violated Florida Statutes 395.0197 and 766.106(6), [and] Florida Administrative Code Rules 59A-3.273 and 59A-3.275."[10] Am. Compl. ¶ 203.[11] Dr. Lowry makes **no** allegation that Nemours **actually violated** any of the aforementioned laws, nor can he. This failure alone dooms his claim. *See, e.g.*, *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d at 1337 (explaining that employee's "reasonable belief" that employer is engaging in illegal activity is not sufficient to satisfy FWA requirement); *Barlow v. Conagra Foods, Inc.*, No. 804CV2286T17TGW, 2005 WL 3133474 at *4 (M.D. Fla. Nov. 23, 2005) ("[U]nlike Title VII's unlawful retaliation provisions, the Florida Whistleblower Act requires the plaintiff to actually prove a violation of a law, rule, or regulation in order to succeed." (internal citation omitted)); *Hamm v. Johnson Bros., Corp.*, No. 6:06-cv-1348, 2007 WL 1247188 at *1 (M.D. Fla. Apr. 30, 2007) ("[T]o prevail on his claim of retaliation

---

[10] Fla. Stat. § 395.0197 mandates that licensed hospitals establish an internal risk management program. Dr. Lowry does not allege that he raised concerns or objected to practices related to an internal risk management program, or lack thereof, at Nemours. *See generally* Am. Compl. Fla. Stat. § 766.106(6) concerns informal discovery conducted before filing claims of medical negligence. Dr. Lowry does not allege that he raised concerns or object to practices related to such informal discovery. *See generally* Am. Compl. Fla. Admin. Code § 59A-3.273 and 59A-3.275 pertain to the requirements that a hospital be under direction of a chief executive officer, and that a hospital have a medical staff organized under written by-laws, respectively. Dr. Lowry does not allege that he raised concerns or object to practices related to these topics. *See generally* Am. Compl.

[11] Dr. Lowry also indicates that he objected to "patient-safety, staffing, physician workload, compensation, and workplace obligations" related to Fla. Stat. §§ 395.0197, 766.106(6) and/or Fla. Admin Code § 59A-3.273, 59A-3.275. These "obligations" have no relevance under the FWA, which covers only objections to "law[s], rule[s], or regulation[s]" defined as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4).

in violation of the Florida Whistleblower's Act, [Plaintiff] must present evidence that the activity about which [Plaintiff] complained was in fact in violation of a law, rule or regulation.").[12]  For these reasons, Count XII should be dismissed with prejudice.

## XIII. Count XV: Dr. Lowry's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.

Dr. Lowry also attempts to state a claim for Intentional Infliction of Emotional Distress (IIED) against all Defendants. To establish a claim for IIED under Florida law, a plaintiff must demonstrate that: "(1) the wrongdoer's conduct was intentional and reckless, i.e., he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, i.e., beyond all bounds of decency, atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995). The issue of whether certain conduct rises to the level of extreme outrageousness required to form the basis for an IIED claim is a question of law. *Hare v. Citrus World Inc.*, 39 F. Supp. 2d 1365, 1369 (M.D. Fla. 1999) (citing *Baker v. Florida Nat. Bank*, 559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990)).

---

[12] Dr. Lowry's FWA claim further fails for many of the same reasons his FLSA retaliation claim fails. Namely, because he does not adequately allege proof of an adverse employment action (including constructive discharge) and because he provides no allegations sufficient to support a finding of causation. *See* Section XI, *supra.*

"Florida law imposes a very high standard on a plaintiff alleging [IIED] in the employment realm." *Scelta v. Delicatessen Support Services, Inc.*, 57 F.Supp.2d 1327, 1357 (M.D. Fla. 1999); *Hare*, 39 F. Supp. 2d. at 1369 ("[P]recedent on the tort of intentional infliction of emotional distress, especially within the employment context, reveals an unwillingness by Florida courts to allow a plaintiff to proceed on this theory; *Doe v. Bd. of Cty. Comm'rs, Palm Beach Cty., Fla.*, 815 F. Supp. 1448, 1450 n.3 (S.D. Fla. 1992) ("Although courts have recognized that emotional distress can be an inherent aspect of the employment relationship…, they have generally been unwilling to find such employment-related conduct outrageous."). A plaintiff may only prevail on a claim of IIED if he can demonstrate that he was the victim of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. Dist. Ct. App. 2007) (quoting *Allen v. Walker*, 810 So. 2d 1090, 1091 (Fla. Dist. Ct. App. 2002)).

Dr. Lowry alleges that he was subjected to verbal harassment and threats of termination by Dr. Wearden and denial of PTO requests by Dr. Baker. Am. Compl. ¶ 223. Dr. Lowry also broadly claims that all Defendants retaliated against him for raising patient-safety concerns, imposed "inequitable scheduling decisions" and "professional burdens," created a professional environment where employee concerns were "systematically suppressed," and "collectively engineered working conditions specifically designed to make Dr. Lowry's continued employment

intolerable." *Id.* Even if true, this conduct does not rise to the level of outrageousness required to form the basis for an IIED claim. Hostile, inequitable, and even "reprehensible" workplace conduct has repeatedly been found insufficient to satisfy the standard of extremity and outrageousness required to state a claim for IIED. *See Martinez v. Pavex Corp.*, 422 F.Supp.2d 1284, 1296 (M.D. Fla. 2006) ("The conduct complained of by Plaintiffs, namely, the repeated use of racial slurs and unjustified delays, while reprehensible, does not meet the high standard imposed by Florida courts for intentional infliction of emotional distress claims."); *Williams v. Worldwide Flight SVCS., Inc.*, 877 So.2d 869, 870 (Fla. Dist. Ct. App. 2004) (intentional infliction of emotional distress claim dismissed where plaintiff's supervisor called him racial slurs, instructed other supervisor to falsify plaintiff's disciplinary records to justify his termination, "constantly" threatened plaintiff with job termination, directed plaintiff to work in dangerous weather conditions, and eliminated plaintiff's break times by scheduling extra shifts); *Mundy v. S. Bell Tel. and Telegraph Co.*, 676 F.2d 503, 504 (11th Cir. 1982) (intentional infliction of emotional distress claim dismissed where plaintiff's superior threatened to "get" plaintiff or destroy his career, transferred him to less desirable job assignments, gave him unfair negative evaluations and refused to approve reimbursement for legitimate business expenses); *Lay v. Roux Lab'ys*, 379 So.2d 451 (Fla. Dist. Ct. App. 1980) (allegations of threatening plaintiff with her job, and using humiliating language, vicious verbal attacks and racial epithets were insufficient to serve as a

33

predicate for the independent tort of intentional infliction of emotional distress). Plaintiff's broad allegations of retaliation and hostility are not sufficiently outrageous to form the basis of an IIED claim. Thus, Count XV should be dismissed with prejudice.

## XIV. Count XVII: Dr. Lowry's Negligent Misrepresentation Claim Must Be Dismissed.

"To establish negligent misrepresentation, a party is required to prove: (1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury." *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n.*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017).

Dr. Lowry fails to identify a single specific representation made to him by Nemours. *See* Am. Compl. ¶¶ 233–39. Rather, he contends that Nemours made an undisclosed number of unspecified representations, at unknown times, "concerning" a variety of general, amorphous topics. Am. Compl. ¶ 235. He then concludes—without supporting factual allegations—that these unspecified representations were "false or materially misleading" and made to induce him to act. Am. Compl. ¶¶ 236–37. Dr. Lowry provides **no** factual support for these conclusions, or his conclusions that Nemours "failed to exercise reasonable care in verifying the accuracy" of these unknown representations, and that he "justifiably relied" upon such representations.

34

Dr. Lowry's negligent misrepresentation claim is a quintessential example of a threadbare, conclusory pleading. *Iqbal*, 556 U.S. at 678 (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss). As a matter of law, the Court must dismiss Dr. Lowry's negligent misrepresentation claim due to its severe lack of specificity and its complete reliance on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## XV. Because Dr. Lowry Has Already Had The Chance To Cure His Pleading Deficiencies, Dismissal With Prejudice Is Warranted.

Dr. Lowry has been on notice of the deficiencies is his pleading since Nemours filed its Motion to Dismiss his Original Complaint on May 4, 2026.  Dr. Lowry did not respond to this Motion, which the Court granted without prejudice, and later filed the Amended Complaint.  Despite having the opportunity to cure his pleading deficiencies, Dr. Lowry's claims remain implausible as pled.  Such failure provides yet another reason why dismissal of the Nemours Counts with prejudice is appropriate at this stage.

## CONCLUSION

For the reasons stated above, Nemours respectfully requests that this Court grant its Motion in full and dismiss the Nemours Counts in their entirety and with prejudice, thus dismissing the Amended Complaint in its entirety against Nemours.

Dated: July 24, 2026              Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Mary Caroline Cravatta*

Larry S. Perlman
Florida Bar No. 91934
lperlman@foley.com
dmilian@foley.com
90 Park Avenue
New York, NY 10016
Telephone: (305) 482-8400

Mary Caroline Cravatta
Florida Bar No. 125712
mcravata@foley.com
avargas@foley.com
301 E. Pine Street
Orlando, FL 32801
Telephone: (407) 423-7656

**ATTORNEYS FOR DEFENDANT**

36

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I conferred with counsel for Plaintiff, Cierra L. Lipps, regarding the relief requested in the foregoing motion via telephonic conference on July 23, 2024.  Plaintiff opposes the relief requested.

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 24, 2026, a copy of the foregoing was served on all counsel of record, as identified below:

Ciera L. Lipps
652 Nina Drive
St. Petersburg, FL 33715
(727) 500-1076
ciera@eazlaw.com

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT**