**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ADAM LOWRY, M.D.,

        Plaintiff,

v.

THE NEMOURS FOUNDATION,
a Florida Non-Profit Corporation d/b/a
NEMOURS CHILDREN'S HOSPITAL,
FLORIDA; PETER D. WEARDEN, M.D.,
Ph.D., individually; and KIMBERLY N.
BAKER, D.O., individually,

        Defendants.

_____/

Case No. 6:26-cv-00919-GAP-DCI

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT THE**
**NEMOURS FOUNDATION'S MOTION TO DISMISS COUNTS I–XII, XV,**
**AND XVII OF PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW, Plaintiff, Adam Lowry, M.D. ("Dr. Lowry"), by and through

undersigned counsel, to respectfully submit this Response in Opposition to

Defendant, The Nemours Foundation's ("Nemours"), Motion to Dismiss Counts

I–XII, XV, and XVII of the Amended Complaint (ECF No. 25) (the "Motion"), and

in support thereof would state as follows:

**I.  INTRODUCTION**

Nemours asks this Court to dismiss, with prejudice, fourteen of the fifteen

counts Dr. Lowry brings against it. As explained in Section IV below, Dr. Lowry

1

does not contest that four of those counts, the freestanding declaratory judgment count, the unpaid-wages count insofar as it purports to be an independent cause of action, the Private Whistleblower Act count, and the intentional-infliction-of-emotional-distress count, cannot proceed on the current pleading, and he does not oppose their dismissal without prejudice.

As to the remaining ten counts, the Motion does not withstand scrutiny. Most fundamentally, Nemours' own Motion is internally inconsistent: Section I.B argues that no written document, not the Employment Offer, not the Compensation Memorandum, not the December 27, 2020 Memorandum of Understanding ("MOU"), says anything about backup or standby pay, while Section VII argues that the very same backup and standby work was already compensated through Dr. Lowry's base salary as one of the "core duties of his role." Mot. at 16–17. Both cannot be true. If, as Nemours insists to defeat Count I, no agreement covers backup and standby pay, then Counts VII and VIII, unjust enrichment and quantum meruit, the doctrines Florida law reserves for exactly this situation, state a claim.

The balance of the Motion fares no better. It asks this Court to resolve, on the face of the pleadings alone, fact questions that Eleventh Circuit and Florida law commit to discovery and the finder of fact: whether a years-long, repeated course of dealing created an implied-in-fact contract; whether Dr. Lowry's backup-

2

availability and administrative Medical Director duties fall within the Fair Labor Standards Act's narrow, physician-specific exemption for time "actually engaged in the practice" of medicine, 29 C.F.R. § 541.304(a)(1); and whether Nemours retaliated against him. None of that can be resolved on a Rule 12(b)(6) motion. The Motion should be denied as to Counts I (in part), II, III, IV, VI, VII, VIII, X (in part), XI, and XVII (in part).

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) tests only the legal sufficiency of the complaint; the Court must accept all well-pled factual allegations as true and construe them, together with all reasonable inferences, in the light most favorable to the plaintiff. *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). A complaint need not prove its case; it need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a probability requirement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and where a complaint pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable," dismissal is inappropriate, *id.* Exemptions, affirmative defenses, and fact-intensive multi-factor tests are ordinarily unsuited to resolution on the pleadings unless the complaint itself establishes the defense as a matter of law. See *Morgan v. Fam.*

3

*Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008) (FLSA exemption status is a fact question).

### III.  ARGUMENT

***A.  Because Nemours' Own Motion Refutes Its Unjust Enrichment and Quantum Meruit Arguments, Counts VII and VIII State a Claim.***

Nemours devotes three (3) pages of its own Motion to establishing that *no* written agreement addresses backup or standby work. It argues that "[t]he Employment Offer, Compensation Memo, and MOU do not contain provisions regarding 'backup' or 'standby' work," Mot. at 10, that the MOU's moonlighting-pay provisions are "separate and distinct" from backup obligations, *id.* at 10 n.7, and that Dr. Lowry "has not pled the existence of a valid contract" covering that work at all. *Id.* at 10.

Two counts later, Nemours reverses course. It argues Dr. Lowry's unjust enrichment and quantum meruit claims fail because he "was paid a salary" and the backup coverage he provided was among "the core duties of his role as a physician at Nemours, for which he was paid a salary." Mot. at 17. That cannot be reconciled with Section I.B. Florida law is clear that unjust enrichment and quantum meruit exist precisely to remedy the gap Nemours itself identifies: valuable services rendered outside any governing agreement. See *Commerce P'ship*

*8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) (quasi-contractual recovery available where services are rendered "with [the recipient's] knowledge, and under circumstances" raising a presumption that compensation was expected); *Doral Collision Ctr., Inc. v. Daimler Trust*, 341 So. 3d 424, 429 (Fla. Dist. Ct. App. 2022) (elements of unjust enrichment).

Nemours' reliance on *Middleton v. International Business Machines Corp.*, 787 F. App'x 619 (11th Cir. 2019), does not help it. *Middleton* applied Georgia law, which the parties there agreed governed the dispute, not Florida law. *Middleton* and the line of cases applying it involved an express incentive-compensation plan that specifically governed the disputed commission payment; the plan itself determined what, if anything, was owed for the work at issue. See *Kingston v. Int'l Bus. Machs. Corp.*, No. C19-1488-MJP (W.D. Wash. Apr. 15, 2020) (explaining that *Middleton* and three companion IBM cases turned on the plaintiffs' lack of a "reasonable expectation" of payment *because* an express plan addressed the specific compensation at issue). Here, by Nemours' own admission, no such document exists. Dr. Lowry alleges he conferred benefits on Nemours, approximately 119 backup assignments, off-the-clock pre- and post-shift work, and administrative and informatics services, that were "separate and distinct from those for which a salary was paid and go beyond the scope of baseline salaried employment duties." Am. Compl. ¶¶ 166–168. Nemours cannot simultaneously

5

disclaim any contractual obligation to pay for that work and insist the salary already covered it. Accordingly, Counts VII and VIII state a claim.

**B.   Dr. Lowry's Written, Oral, and Implied-in-Fact Contract Claims Are Adequately Pled (Counts I, II, and III).**

> **1.  Count I states a claim as to PTO and CME reimbursement because those obligations arise from policies incorporated by reference into the Employment Offer.**

Nemours is correct that Florida law does not treat a freestanding employee handbook as an enforceable contract absent the parties' explicit mutual consent. *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000). But *Webster* and *OneSource Facility Servs., Inc. v. Mosbach*, 508 F. Supp. 2d 1115, 1123 (M.D. Fla. 2007), both addressed policies with no textual connection to a signed agreement. Here, the written Employment Offer itself "incorporated and referenced Nemours policies and procedures, including policies governing benefits, professional conduct, paid time off, reimbursement, and workplace obligations." Am. Compl. ¶ 43. Where a signed offer document expressly incorporates specific policies by reference, those policies become part of the written agreement the offer itself creates, a materially different posture than the standalone handbooks at issue in *Webster* and *OneSource*. See *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (documents referenced in and central to the complaint are properly considered on a motion to dismiss). Count I therefore

6

states a claim at least as to the PTO-accrual, PTO-payout, and CME-reimbursement obligations Nemours' own incorporated policies address.

### 2.  *Count II adequately alleges an oral contract.*

An oral contract requires offer, acceptance, consideration, and sufficient specification of essential terms. *Kolodziej v. Mason*, 774 F.3d 736, 740–41 (11th Cir. 2014). Nemours faults Dr. Lowry for not naming the individual who made each oral promise, Mot. at 11–12, but neither *Kolodziej* nor *Tiara Condominium Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 746 (11th Cir. 2010), requires that degree of specificity; both address whether the *terms* themselves are sufficiently definite, not the identity of the speaker. Dr. Lowry alleges that "Nemours, through authorized representatives and program leadership," entered into oral agreements concerning compensation, backup coverage, standby obligations, and PTO, Am. Compl. ¶ 123, and ties those oral understandings to the same subject matter as the MOU's specific numeric terms: an 11-shift monthly minimum and $150–$225 hourly moonlighting rates. *Id.* ¶¶ 64, 68–69. The Amended Complaint therefore pleads sufficient ultimate facts for the pleading stage.

### 3.  *Count III's implied-in-fact contract claim presents a fact question inappropriate for resolution on the pleadings.*

An implied-in-fact contract arises where the parties' conduct establishes a tacit understanding that compensation was expected. *Commerce P'ship 8098*, 695

7

So. 2d at 386. Nemours argues that because Dr. Lowry performed backup work for years without additional pay, the parties' conduct proves the opposite understanding: that no pay was owed. Mot. at 13–14. That is a factual inference about the meaning of a course of dealing, not a legal conclusion that the Court should decide on a motion to dismiss. Dr. Lowry alleges the opposite inference is the correct one: that Nemours "repeatedly requested, required, scheduled, accepted, and benefited from" his additional work "while knowing that those services were provided in the context of a physician-employment relationship governed by compensation expectations," Am. Compl. ¶ 132, within a framework the MOU itself established for compensating work beyond minimum shift obligations. *Id.* ¶¶ 133–134. At this stage, that allegation must be credited and the Court should deny Nemours request to dismiss Dr. Lowry's implied-in-fact contract claim.

### C. The Implied-Covenant and Promissory-Estoppel Claims Are Tied to Definite, Express MOU Terms (Counts IV and VI).

Nemours correctly states that Florida's implied covenant of good faith and fair dealing attaches only to an identified express contractual term, *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1235 (Fla. Dist. Ct. App. 2001), and that promissory estoppel requires a "definite" representation as to time, terms, and reasonableness, *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 925 (Fla. 1989). Both rules are satisfied here. The MOU is not a vague aspiration, it

8

fixes an 11-shift monthly minimum, a $150-per-hour rate for the first six moonlighting shifts, a $5,000 bonus at the sixth shift, $225-per-hour rates for the seventh and eighth shifts, and a minimum five-day time-off block each month. Am. Compl. ¶¶ 64, 66–70. Count IV alleges Nemours exercised its scheduling and workload discretion under those specific express terms in a manner that defeated their equitable-distribution and burnout-prevention purpose. *Id.* ¶¶ 143–145. Count VI ties the same numerically definite MOU commitments to a promissory-estoppel theory in the alternative, should the Court find any of those terms fall short of an enforceable contract obligation. *Id.* ¶¶ 156–158. Both counts identify exactly the kind of definite, express commitment the cases Nemours cites require. Accordingly, the Court should not dismiss either Count IV or VI of Dr. Lowry's Amended Complaint.

### D.  Dr. Lowry's FLSA Claims Turn on Fact Questions Nemours Cannot Resolve on the Pleadings (Counts X and XI).

Nemours argues Dr. Lowry is exempt from the FLSA as a matter of law under the learned-professional exemption for physicians, 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.304(a)(1), because he alleges he is "a physician" providing "cardiac intensive care." Mot. at 20–22. Section 541.304 is unusual among the FLSA's professional exemptions: it applies categorically, without the salary-basis or primary-duty balancing test that governs other exemptions, but *only* to time a physician spends "actually engaged in the practice" of medicine. 29 C.F.R. §

9

541.304(a)(1). Dr. Lowry does not concede, and the Amended Complaint does not establish, that all of the compensable time at issue meets that description. To the contrary, Dr. Lowry alleges that his approximately 119 uncompensated "backup" and "standby" assignments required only that he "remain[] continuously available" and subject to call-in — not that he was treating patients — Am. Compl. ¶¶ 83, 100, and that he separately served as "Medical Director of Clinical Informatics," an administrative role distinct from bedside cardiac intensive care. *Id.* ¶¶ 2, 26, 47. Whether on-call availability time and administrative informatics work fall within § 541.304's "actually engaged in the practice" language, or instead require analysis under the administrative exemption's fact-intensive primary-duty test, 29 C.F.R. §§ 541.200–.203, is "a question of fact" this Circuit has held unsuited to resolution without a developed record. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008).

Nemours' retaliation arguments largely rise or fall with the same exemption question. Whether Dr. Lowry's belief that his backup and administrative time was compensable was "objectively reasonable" cannot be resolved as a matter of law where, as shown above, the underlying exemption question is itself genuinely disputed. Nor does *Debe v. State Farm Mutual Automobile Insurance Co.*, 860 F. App'x 637, 640 (11th Cir. 2021), defeat causation. *Debe* addressed conduct that predated and was unaffected by the plaintiff's complaint; Dr. Lowry alleges Nemours

10

responded to his complaints by "refusing to remedy" and "continuing" the very practices he challenged, Am. Compl. ¶ 197, which is itself a form of causally connected retaliatory conduct distinct from the pre-existing conduct *Debe* addressed. Finally, Nemours' own Motion concedes that "[w]hether a 'constructive discharge' qualifies as an 'adverse employment action' under the FLSA remains an open question" in this Circuit. Mot. at 27 (quoting *Garrido v. Pro Servs. Grp., LLC*, No. 9:24-cv-80027, 2024 WL 5056997, at *4 (S.D. Fla. Aug. 7, 2024)). An open question of law cannot be resolved against Dr. Lowry on a motion to dismiss.

### E. Dr. Lowry Has Adequately Pled Negligent Misrepresentation as to Nemours' Recruitment-Era Statements of Existing Fact (Count XVII).

Negligent misrepresentation requires a misrepresentation of material fact — a false statement the maker believed true. *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n*, 232 So. 3d 502, 505 (Fla. Dist. Ct. App. 2017). It follows that the statement must be one capable of being true or false when made, not merely an unfulfilled promise of future performance. Several of the representations Dr. Lowry identifies describe Nemours' *then-existing* conditions, not future promises. During his 2016–2017 recruitment, Nemours represented "the adequacy of physician staffing levels to meet patient care demands without imposing uncompensated obligations upon existing physicians" — a statement about the staffing model as it *then stood*, capable of being true or false when made. Am.

11

Compl. ¶ 235(d); see *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1395 (11th Cir. 1997) (negligent supply of false information for guidance in a business transaction). Dr. Lowry alleges Nemours failed to disclose "existing staffing insufficiencies" and "operational and financial pressures" it knew about at the time it made those representations. Am. Compl. ¶ 236. That is a plausible claim as to the recruitment-era representations, whatever the merits of the more promissory MOU-implementation statements alleged elsewhere in the same count.

## IV. PLAINTIFF DOES NOT OPPOSE DISMISSAL WITHOUT PREJUDICE OF COUNTS V, IX, XII, AND XV

Consistent with counsel's obligations of candor to the Court, Dr. Lowry does not oppose dismissal of the following four counts and respectfully requests only that dismissal be without prejudice for the reasons set forth in Section V below.

**Count V (Declaratory Judgment).** The Declaratory Judgment Act, 28 U.S.C. § 2201, "creates a remedy, not a cause of action." *Washington v. PNC Bank, N.A.*, No. 8:25-cv-2898, 2026 WL 1858429, at *3 (M.D. Fla. June 29, 2026); *accord Foley v. Orange Cty.*, No. 6:12-cv-269, 2012 WL 6021459, at *8 (M.D. Fla. Dec. 4, 2012); *Burke v. Johnson*, No. 6:16-cv-199, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016). Count V seeks a declaration on the same contractual obligations, backup pay, PTO, CME reimbursement, already at issue in Counts I through IV. Am. Compl. ¶¶ 148–154. Dr. Lowry does not oppose dismissal of Count V as duplicative.

**Count IX (Fla. Stat. § 448.08).** Section 448.08 authorizes an award of fees and costs to the prevailing party in a wage action "brought pursuant to some other law"; it does not itself create a cause of action. *Coleman v. JCS Investigations & Sec., LLC,* No. 8:24-cv-2607, 2025 WL 2694990, at *2 (M.D. Fla. Aug. 28, 2025). Dr. Lowry does not oppose dismissal of Count IX as a standalone count and    √√√clarifies that he continues to seek fees and costs under § 448.08 with respect to the wage components recoverable under Counts I through III, as his own pleading already reflects. Am. Compl. ¶ 184.

**Count XII (Florida Private Whistleblower Act).** In *Gessner v. Southern Co.,* No. SC2024-1835, slip op. at 19–20 (Fla. May 28, 2026), the Florida Supreme Court held that a Fla. Stat. § 448.102(3) plaintiff must plead "ultimate facts" showing that the employer's conduct "is, by definition, in violation of a law," not merely that the employee reasonably believed it was. Paragraph 203 of the Amended Complaint alleges that Dr. Lowry objected to conduct he "reasonably believed violated" the statutes and rules identified, the standard *Gessner* rejected. Dr. Lowry does not oppose dismissal of Count XII on this basis.

**Count XV (Intentional Infliction of Emotional Distress).** Florida imposes an exceptionally high bar on employment-context IIED claims, and comparable or more severe conduct has repeatedly been held insufficient. E.g., *Mundy v. S. Bell Tel. & Tel. Co.,* 676 F.2d 503, 504 (11th Cir. 1982); *Williams v. Worldwide Flight Servs.,*

13

*Inc.*, 877 So. 2d 869, 870 (Fla. Dist. Ct. App. 2004); *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006). Dr. Lowry does not oppose dismissal of Count XV.

## V.  ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND

Nemours asks that every count be dismissed with prejudice because Dr. Lowry did not respond to its motion to dismiss the Original Complaint, which the Court granted without opposition. Mot. at 35. But because that earlier dismissal was unopposed, the Court never reached the merits of any pleading defect, and Dr. Lowry has never had the benefit of a judicial ruling identifying what, specifically, requires correction. This is accordingly the first substantive test of these theories. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), and is properly denied only for undue delay, bad faith, undue prejudice, or repeated failure to cure deficiencies after notice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). None of those circumstances is present here. To the extent the Court dismisses any count, including the counts addressed in Section IV, Dr. Lowry respectfully requests that dismissal be without prejudice and with leave to amend.

14

*[Remainder of page intentionally left blank]*

## VI.  CONCLUSION

For the foregoing reasons, Dr. Lowry respectfully requests that the Court deny Defendant's Motion to Dismiss as to Counts I (in part), II, III, IV, VI, VII, VIII, X (in part), XI, and XVII (in part), and, to the extent the Court dismisses any count of the Amended Complaint, that it do so without prejudice and with leave to amend.

Dated August 14, 2026.

Respectfully submitted,

***/s/ Ciera L. Lipps***
Ciera L. Lipps, Esq.
Florida Bar No. 1018624
**ELIZABETH ZWIBEL LAW**
652 Nina Drive
St. Petersburg, FL 33715
Telephone: (727) 500-1076
Facsimile: (727) 255-5225
Ciera@eazlaw.com
TeamLiz@eazlaw.com
Allyson@eazlaw.com
*Attorney for Plaintiff*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court and furnished to counsel for the Defendant, The Nemours Foundation, via electronic service utilizing the CM/ECF system to all parties listed in the enclosed Service List via transmission of Notices of Electronic Filing generated by CM/ECF and to Defendants, Peter D. Wearden, M.D., Ph.D., and Kimberly N. Baker, D.O., via USPS mail.

Dated August 14, 2026.

*/s/ Ciera L. Lipps*
Ciera L. Lipps, Esq.
Florida Bar No. 1018624
**ELIZABETH ZWIBEL LAW**
652 Nina Drive
St. Petersburg, FL 33715
Telephone: (727) 500-1076
Facsimile: (727) 255-5225
Ciera@eazlaw.com
TeamLiz@eazlaw.com
Allyson@eazlaw.com
*Attorney for Plaintiff*

16

**SERVICE LIST**
**United States District Court**
**Middle District of Florida**
**Case No.  6:26-CV-00919-GAP-DCI**

MARY CAROLINE CRAVATTA, ESQ.
LARRY SCOTT PERLMAN, ESQ.
FOLEY & LARDNER LLP
301 E. PINE STREET, SUITE 1200
ORLANDO, FL 32801
(407)236-5870
MCRAVATTA@FOLEY.COM
LPERLMAN@FOLEY.COM


DEFENDANT DR. KIMBERLY N. BAKER
2521 FIELDBROOKE WAY
EDGEWATER, FL 32141


DEFENDANT DR. PETER D. WEARDEN
10356 KINSINGTON SHORE DR.
ORLANDO, FL 32827

17