**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ADAM LOWRY, M.D.,**

*Plaintiff*,

v. Case No. 6:26-cv-00919

**THE NEMOURS FOUNDATION**,
A Florida Not-for-Profit Corporation d/b/a
**NEMOURS CHILDREN'S HOSPITAL, FLORIDA;**
**PETER D. WEARDEN, M.D., Ph.D.,** individually**;**
and **KIMBERLY N. BAKER, D.O.,** ***individually*****,**

*Defendants*.
_______________________________________________________/

**DEFENDANT DR. WEARDEN'S MOTION TO DISMISS COUNTS XIII, XV, AND XVI OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant Peter D. Wearden, M.D., Ph.D., individually ("Dr. Wearden"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files his Motion to Dismiss Counts XIII, XV, and XVI (the "Dr. Wearden Counts") of the Amended Complaint (ECF No. 17) filed in this action by Plaintiff, ADAM LOWRY, M.D. ("Dr. Lowry"). For the reasons stated herein, the Counts filed against Dr. Wearden should be dismissed in full and with prejudice.

## INTRODUCTION

In his Amended Complaint (ECF No. 17), Dr. Lowry attempts to shoehorn his generalized frustrations with his employment as a physician

with co-Defendant, The Nemours Foundation ("Nemours"), into seventeen (17) different causes of action; three of which are directed at Dr. Wearden in his individual capacity: Count XIII (Tortious Interference with Employment Contract); Count XV (Intentional Infliction of Emotional Distress), which is asserted against all Defendants; and Count XVI (Civil Conspiracy), which is asserted against Dr. Wearden and co-Defendant, Dr. Kimberly Baker ("Dr. Baker.")

Dr. Lowry's claims against Dr. Wearden suffer from incurable deficiencies and fail to state a claim upon which relief can be granted. Specifically, Dr. Lowry's reliance on impermissible legal conclusions, vague allegations, and formulaic recitations of elements fails to satisfy the plausibility standards required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Nemours has separately filed its own Motion to Dismiss (ECF No. 25) addressing the counts plead against Nemours directly, including Counts I–XII, XV, and XVII, and Dr. Wearden incorporates those arguments where applicable. For these reasons, and as further articulated below, Dr. Wearden respectfully requests that this Court dismiss Counts XIII, XV, and XVI with prejudice.

## DR. LOWRY'S ALLEGATIONS[1]

### I. Allegations Regarding Dr. Lowry's Employment And Dr. Wearden's Role At Nemours

1. Dr. Lowry is a physician who worked and resided in Florida during the time period relevant to his Amended Complaint. Am. Compl. ¶ 24.

2. Nemours is a not-for-profit corporation that operates a hospital—Nemours Children's Hospital—in Orlando, Florida. Am. Compl. ¶ 27.

3. Dr. Lowry worked as a Pediatric Cardiac Intensivist and Cardiac Intensive Care Physician at Nemours from September 29, 2017, until his resignation in May 2025. Am. Compl. ¶¶ 2–3. During this time, he also worked as the Medical Director of Clinical Informatics for the Nemours Cardiac Center and provided cardiac intensive care to pediatric patients, including those with congenital cardiac disease. Am. Compl. ¶¶ 26, 34, 40.

4. Dr. Lowry alleges that Dr. Wearden served in senior leadership roles within the Nemours Cardiac Center, with oversight responsibility over the Pediatric Cardiac Critical Care service line, physician scheduling, compensation practices, physician coverage decisions, patient-safety

[1] Solely for the purpose of this Motion, Dr. Wearden assumes the truth of Dr. Lowry's factual allegations (but not mere conclusions), as required under the Federal Rules of Civil Procedure.

matters, and management of physicians. Am. Compl. ¶ 31.

## II. Allegations Regarding The "Governing" Alleged Written Contract Documents

5. Dr. Lowry claims that his compensation and work obligations, paid time off ("PTO"), and reimbursement of professional expenses were "governed" by: (1) a May 5, 2017 employment offer (the "Employment Offer") (attached as Exhibit A to the Original Complaint); (2) a December 24, 2020 compensation memorandum (the "Compensation Memo") (attached as Exhibit B to the Original Complaint); and (3) a December 27, 2020 Memorandum of Understanding (the "MOU") (attached as Exhibit B to the Original Complaint). Am. Compl. ¶ 5.

6. The Employment Offer established a base salary of $270,000.00, benefits, and eligibility for incentive bonuses. Am. Compl. ¶ 41; Compl. at Ex. A.

7. The Employment Offer expressly noted that Dr. Lowry was employed at-will, and that his duties could change depending on funding and Nemours' needs. Am. Compl. ¶ 44; Compl. at Ex. A.

8. The Compensation Memo raised Dr. Lowry's base salary to $295,000.00, (effective January 1, 2021), with total compensation potential of up to $324,500.00. Am. Compl. ¶¶ 57–58; Compl. at Ex. B.

9. The MOU documented a discussion amongst Dr. Lowry's

department regarding the shift expectations for full-time physicians. Compl. at Ex. B. Dr. Wearden issued the MOU to Dr. Lowry on December 27, 2020. Compl. at Ex. B; Am. Compl. ¶¶ 59–62.

10. The MOU set forth "guidelines" applicable to shift scheduling for full-time physicians. It generally expected Dr. Lowry to cover a minimum of eleven shifts per month and addressed additional "moonlighting shifts," for which he would be paid at an agreed-upon rate. Compl. at Ex. B; Am. Compl. ¶¶ 62–66.

11. The Employment Offer, the Compensation Memo, and the MOU—the terms of which speak for themselves—do not refer to or otherwise address Dr. Lowry's entitlement to PTO, the reimbursement of professional expenses, "backup obligations," "standby work," or "off-the-clock" work. *See generally* Exs. A, B, C.

## III. Allegations Regarding Dr. Wearden's Conduct Towards Dr. Lowry

12. Dr. Lowry alleges that Dr. Wearden: (a) imposed mandatory backup or standby obligations without compensation; (b) denied or frustrated Dr. Lowry's use of PTO; (c) assigned disproportionate workloads; (d) engaged in verbal harassment, threats, and retaliation; (e) made scheduling and staffing decisions that deprived Dr. Lowry of alleged contractual benefits; and (f) implemented MOU coverage in a manner that

shifted financial burdens to Dr. Lowry. Am. Compl. ¶ 212.

13. Dr. Lowry further alleges that Dr. Wearden's conduct was motivated by "personal animus" and a desire to suppress Dr. Lowry's patient-safety complaints. Am. Compl. ¶ 213.

14. As to Count XV, Dr. Lowry alleges that Dr. Wearden subjected him to verbal harassment and threats of termination. Am. Compl. ¶ 223.

15. As to Count XVI, Dr. Lowry alleges on information and belief that Dr. Wearden and Dr. Baker agreed to engage in the foregoing conduct and identifies scheduling, workload, and PTO decisions as alleged overt acts. Am. Compl. ¶¶ 229–30.

16. Dr. Lowry alleges that the foregoing conduct caused economic and non-economic damages and contributed to his resignation. Am. Compl. ¶¶ 223, 226.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint on its face. *Johnson v. Fleet Fin. Inc.*, 785 F. Supp. 1003, 1005 (S.D. Ga. 1992). "When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed" and must accept all well-pleaded factual

allegations as true. *McArdle v. City of Ocala*, 418 F. Supp. 3d 1004, 1006 (M.D. Fla. 2019) (citing *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Moreover, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (stating that a complaint does not suffice where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). To this end, "the Court may dismiss a claim when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," or when a plaintiff's well-pleaded factual allegations, taken as true, fail to

establish entitlement to relief. *Conyers v. Ayers*, 5:22-cv-115, 2023 WL 5533504, at *1 (M.D. Fla. July 20, 2023) (internal quotations omitted).

## MEMORANDUM OF LAW

### I. Count XIII: Dr. Lowry's Tortious Interference With Employment Contract Claim Must Be Dismissed.

Dr. Lowry's tortious interference claim is legally deficient and must be dismissed for three reasons: (1) Dr. Lowry's Complaint confirms that Dr. Wearden (his supervisor and a member of Nemours leadership) was not a stranger to the alleged employment contract at issue and acted in Nemours' best interests with respect to Dr. Lowry; (2) the alleged employment contract documents do not contain the provisions Dr. Lowry claims Dr. Wearden allegedly "interfered with"; and (3) Dr. Lowry does not allege that Dr. Wearden engaged in conduct directed to Nemours that caused Nemours to breach any alleged contract with Dr. Lowry.

To state a claim for tortious interference with contract under Florida law, a plaintiff must plead facts establishing: (1) the existence of a contract or business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff resulting from the interference. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). Critically,

"[f]or the interference to be unjustified, the interfering defendant must be a third party, a ***stranger*** to the business relationship." *Id.* (emphasis added). This so-called "'privilege to interfere' enjoyed by an officer or employee of a contracting party" is destroyed where "an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." *Id.*; *see also Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981).

**A. Dr. Wearden Was Not A Stranger To The Alleged Contract And Acted In Nemours' Best Interests.**

As an initial matter, the Court should dismiss Dr. Lowry's tortious interference with contract claim against Dr. Wearden because Dr. Lowry's own allegations show that Dr. Wearden was not a stranger to Dr. Lowry's employment relationship with Nemours, but instead was his supervisor and employed by Nemours. *See Salit*, 742 So. 2d at 386; *see also Buckner*, 403 So. 2d at 1028 (stating that "a cause of action for wrongful interference with a business relationship is recognized only when the interference is by one who is not a party to that relationship"); Am. Compl. ¶ 31. As Dr. Lowry's then-supervisor, Dr. Wearden enjoyed a "privilege to interfere" unless he acted "solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and [his] conduct concerning the

contract . . . [was] not in the employer's [Nemours'] best interest." *Salit*, 742 So. 2d at 386.

Dr. Lowry alleges that Dr. Wearden was motivated by "personal animus" and acted without an honest belief that his actions would benefit Nemours. Am. Compl. ¶ 213. Yet, Dr. Lowry pleads no ultimate facts in support of these allegations, alleging instead only in conclusory fashion that Dr. Wearden acted "without the honest belief that his actions would benefit" Nemours, "outside the scope of his legitimate corporate interests," and "not in [Nemours'] best interests." *See* Am. Compl. ¶¶ 212–13 (alleging supervisory conduct without facts showing that Dr. Wearden acted outside Nemours' interests or without an honest belief his actions would benefit Nemours). These allegations are conclusory and do nothing more than track the legal standard.

Conversely, Dr. Lowry's other allegations show affirmatively that Dr. Wearden acted ***without*** ulterior purpose—i.e., within the scope of his legitimate corporate authority—and in Nemours' best interests. First, Dr. Lowry alleges that at the time of the relevant events, Dr. Wearden was an employee of Nemours who held senior leadership roles within the Nemours Cardiac Center and who had oversight responsibility over the Pediatric Cardiac Critical Care service line, physician scheduling, compensation

practices, physician coverage decisions, patient-safety matters, and management of physicians. Am. Compl. ¶ 31. Second, the conduct Dr. Lowry challenges—scheduling, workload, physician coverage, compensation, and staffing decisions—are quintessential supervisory activities within the Cardiac Center's legitimate corporate interests. These allegations underscore that Dr. Wearden's actions: (a) were based not on "ulterior motives" but on Dr. Wearden's roles as Dr. Lowry's supervisor and a member of Nemours' leadership; and (b) benefited Nemours and were in its best interests.

In support of his claim against Dr. Wearden, Dr. Lowry relies upon *Sloan v. Sax*, 505 So. 2d 526 (Fla. 3d DCA 1987), but *Sloan* does not support his position. *See* Am. Compl. ¶ 213. Instead, *Sloan* confirms that malice alone does not destroy the corporate officer's privilege—the privilege is destroyed only when the officer "acts solely with ulterior purposes and the advice is not in the principal's best interest," or acts "without an honest belief that his action would benefit his employer." *Sloan*, 505 So. 2d at 528 (quoting *Scussel v. Balter*, 386 So. 2d 1227, 1228 (Fla. 3d DCA 1980)). Here, as set forth above, the conduct Dr. Lowry challenges (*i.e.*, scheduling, workload, physician coverage, compensation, and staffing decisions) are quintessential supervisory activities that fall squarely within Dr. Wearden's authority as a member of Nemours' leadership.

Dr. Lowry's conclusory allegations that Dr. Wearden acted with "personal animus" fail to plead specific facts showing that Dr. Wearden acted wholly outside the scope of his corporate authority or that his actions were entirely devoid of any business justification. Accordingly, *Sloan* and its progeny support dismissal, not survival, of Count XIII.

Because Dr. Lowry's allegations show that Dr. Wearden is not a stranger to Dr. Lowry's employment relationship with Nemours and that Dr. Wearden's actions were based on his role as supervisor and were for the benefit of Nemours and in its best interests, this Court should dismiss Dr. Lowry's claim for tortious interference against Wearden (Count XIII) with prejudice.

**B. The Alleged Employment Contract Does Not Contain The Provisions Dr. Lowry Claims Dr. Wearden "Interfered" With.**

Additionally, dismissal is also proper because none of the alleged contract documents at issue govern the substantive areas of employment with which Dr. Lowry claims Dr. Wearden interfered. The Employment Offer, Compensation Memo, and MOU—the terms of which speak for themselves—***do not*** contain provisions regarding backup or standby work, pre-shift, post-shift, or off-the-clock work, PTO accrual or payout, or reimbursement of professional expenses. The Employment Offer and

Compensation Memo cover Dr. Lowry's salary, while the MOU addresses something called "moonlighting shifts." Because the documents Dr. Lowry identifies do not contain provisions governing the disputes he alleges, they do not establish a contractual right as to those issues. *See Celestine v. Capital One*, 741 Fed. Appx. 712, 714 (11th Cir. 2018) ("Where exhibits are submitted that contradict the alleged facts, the exhibits control, despite our construction of facts in favor of their truth.").

More specifically, the MOU's reference to moonlighting shifts does not create a right to compensation for backup or standby availability. A moonlighting shift is a shift actually worked by a physician, whereas Dr. Lowry alleges that backup assignments required only ***availability***.[2] Similarly, no Nemours employment policy creates any enforceable contract right absent explicit mutual consent, which does not exist in this case. *See Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (dismissing plaintiff's breach of contract claim and stating that

[2] To this end, and as set forth in Section X of Nemours' separately filed Motion to Dismiss (ECF No. 25), Dr. Lowry was a practicing physician exempt from the FLSA's minimum-wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.304(a)(1); *Brown v. Suncoast Skin Sols., Inc.*, No. 6:17-cv-515, 2017 WL 2361649, at *3 (M.D. Fla. Apr. 26, 2017). As an exempt professional, Dr. Lowry had no independent right to additional compensation merely for being available during alleged standby periods. The identified documents do not provide for standby compensation, so the FLSA exemption further confirms that there was no right for Dr. Wearden to interfere with. This additional defect independently supports dismissal of Count XIII.

employment policy "whether stated orally or given to the plaintiff in handbook form, does not create an enforceable and independent contract right against the defendant"). In sum, because there was no valid contract governing these disputes, there was no contract for Dr. Wearden to interfere with as to these issues.

### C. Dr. Lowry Does Not Allege That Dr. Wearden Directed Conduct To Nemours Causing Nemours To Breach Or Terminate Its Contract with Dr. Lowry.

Count XIII also fails for the independent reason that Dr. Lowry alleges no interference from Dr. Wearden directed to Nemours and no breach or termination of the alleged contract by Nemours. Fundamentally, "[t]he gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other." *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. 1st DCA 1992). The essence of the claim requires that the defendant's alleged conduct be directed to a contracting party and induce that contracting party to breach or terminate the contract to the detriment of the plaintiff. *See, e.g.*, *Dade Enters., Inc. v. Wometco Theatres, Inc.*, 160 So. 209, 210 (Fla. 1935) (stating that "[i]f one maliciously interferes with a contract between two persons, and ***induces one of them to breach the contract to the injury of the other***, the injured party may maintain

an action against the wrongdoer[.]" (emphasis added)).

In the Amended Complaint, Dr. Lowry concedes that he resigned yet attempts to recast that resignation as having been "induced" by Dr. Wearden—without alleging that Dr. Wearden actually directed any conduct to Nemours or that Nemours terminated or otherwise breached Dr. Lowry's alleged contract documents. *See* Am. Compl. ¶¶ 212–13, 223. Such pleading contradicts the "gravamen" of tortious interference with contract, which requires allegations that a third party induced one contracting party to breach or terminate the contract with the other contracting party and caused injury. *McKinney-Green, Inc.*, 606 So. 2d at 397; *see also Dade Enters., Inc.*, 160 So. at 210. Put differently, to state a claim for tortious interference with his contract, it is insufficient for Dr. Lowry to allege that Dr. Wearden induced Dr. Lowry to resign. Instead, Dr. Lowry must allege that Dr. Wearden ***induced Nemours*** to breach the underlying contract or terminate Dr. Lowry's employment; fatal to his claim, he cannot do so. *See Farah v. Canada*, 740 So. 2d 560, 561–62 (Fla. 5th DCA 1999); *Ft. Lauderdale Riverwalk Props., Inc. v. White*, 531 So. 2d 739, 740–41 (Fla. 4th DCA 1988).

Because Dr. Lowry does not allege that Dr. Wearden directed any conduct to Nemours or that Nemours breached or terminated his

employment agreement, nor can he, Count XIII fails. This defect is incurable. To state a claim for tortious interference, Dr. Lowry must allege that Dr. Wearden induced Nemours-the contracting party-to breach or terminate the at issue contract, not that Dr. Wearden's workplace conduct led Dr. Lowry himself to resign. *See McKinney-Green, Inc.*, 606 So. 2d at 397. Dr. Lowry cannot satisfy this element because Nemours never breached any contract or terminated his employment—Dr. Lowry resigned. Accordingly, Count XIII must be dismissed with prejudice.

## II. Count XV: Dr. Lowry's Intentional Infliction Of Emotional Distress Claim Must Be Dismissed.

Dr. Lowry also attempts to state a claim for Intentional Infliction of Emotional Distress ("IIED") against all Defendants. As a threshold matter, Count XV is a shotgun pleading that independently warrants dismissal. It lumps "all Defendants" together and incorporates all 108 preceding factual paragraphs—including allegations regarding contract breaches, wage claims, and whistleblower statutes—without specifying which conduct by which defendant gives rise to the IIED claim. Am. Compl. ¶¶ 221–26. The Eleventh Circuit has repeatedly held that such pleading fails to provide fair notice and warrants dismissal. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *Celestine*, 741 Fed. Appx. at 714. This basis alone warrants dismissal of Count XV.

Even putting aside this defect, to establish a claim for IIED under Florida law, a plaintiff must demonstrate that: (1) the wrongdoer's conduct was intentional and reckless, meaning he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, beyond all bounds of decency, atrocious, and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. 5th DCA 1995). Whether conduct is sufficiently outrageous is a question of law. *Hare v. Citrus World Inc.*, 39 F. Supp. 2d 1365, 1369 (M.D. Fla. 1999).

Florida law imposes a very high standard on IIED claims brought in the employment realm. *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1357 (M.D. Fla. 1999). Courts are generally unwilling to find employment-related conduct outrageous. *Hare*, 39 F. Supp. 2d at 1369; *Doe v. Bd. of Cty. Comm'rs, Palm Beach Cty., Fla.*, 815 F. Supp. 1448, 1450 n.3 (S.D. Fla. 1992). In order to be actionable, the workplace conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. 4th DCA 2007).

As to Dr. Wearden, Dr. Lowry alleges only verbal harassment and threats of termination. Am. Compl. ¶ 223. His broader allegations that Defendants retaliated against him, suppressed patient-safety concerns, made inequitable scheduling decisions, imposed professional burdens, and engineered intolerable working conditions are conclusory and do not identify conduct approaching the required level of outrageousness. Am. Compl. ¶ 223. Even if true, allegations of verbal harassment, scheduling disputes, threats of termination, workload disagreements, and alleged retaliation do not rise to the level of outrageousness required for IIED. *See Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (racial slurs and unjustified delays insufficient); *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (racial slurs, threats of termination, dangerous assignments, and schedule changes insufficient); *Mundy v. S. Bell Tel. & Tel. Co.*, 676 F.2d 503, 504 (11th Cir. 1982) (career threats, unfavorable assignments, unfair evaluations, and denied expense reimbursement insufficient); *Lay v. Roux Labs., Inc.*, 379 So. 2d 451 (Fla. 1st DCA 1980) (job threats, humiliating language, and verbal attacks insufficient). Count XV should therefore be dismissed with prejudice as to Dr. Wearden.

### III. Count XVI: Dr. Lowry's Civil Conspiracy Claim Must Be Dismissed.

Finally, Dr. Lowry's claim for civil conspiracy is legally deficient and must be dismissed for three reasons: (1) he identifies no separate actionable tort to underly his claim; (2) he alleges no facts to create a plausible inference that Drs. Wearden and Baker agreed to commit some unlawful act; and (3) his claim is barred by the intracorporate conspiracy doctrine.

Under Florida law, civil conspiracy requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the acts done under the conspiracy. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Civil conspiracy is not an independent tort, however; instead, it requires an actionable underlying tort. *Raimi*, 702 So. 2d at 1284; *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019).[3] Because Dr. Lowry's tortious-interference and IIED claims ultimately fail for the reasons set forth above, these torts cannot form the basis for his civil-

[3] Dr. Lowry cites *Tejera* and *Martinez* in support of his civil-conspiracy claim. Am. Compl. ¶ 228. But both cases actually support dismissal. *See Tejera*, 271 So. 3d at 103 (holding that "[t]here is no freestanding cause of action in Florida for 'civil conspiracy'" and that a plaintiff "must allege an underlying independent tort"); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1055, 1067–68 (11th Cir. 2007) (affirming dismissal of civil-conspiracy claims where plaintiffs failed to allege "a key element of conspiracy-that there was an agreement to commit an unlawful act" and failed to plead fraud with specificity). Thus, these cases serve only to expose the deficiencies in his own Amended Complaint that warrant dismissal now.

conspiracy claim. Additionally, Dr. Lowry's FLSA retaliation claim is directed only at Nemours, not at Dr. Wearden individually; thus this statutory employment claim cannot be bootstrapped into a common-law tort claim against individual supervisors. *See Poole v. City of Plantation*, No. 05-61698, 2006 WL 8432490, at *3 (S.D. Fla. May 16, 2006) (holding that civil relief under the FLSA anti-retaliation provision is available only against employers, not individual supervisors in their personal capacities). For this reason, Dr. Lowry's claim for civil conspiracy cannot survive dismissal.

In any event, Dr. Lowry's allegations at paragraph 229 regarding Dr. Warden's and Dr. Baker's agreement "to engage in coordinated conduct directed at Dr. Lowry" are entirely conclusory and speculative. Pleading on "information and belief," he does not identify any specific agreement, communication, meeting, or other facts showing a meeting of the minds between Dr. Wearden and Dr. Baker. Such "naked assertions devoid of further factual enhancement" do not satisfy *Twombly*, 550 U.S. at 557, or *Iqbal*, 556 U.S. at 678. *See also Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1055 (11th Cir. 2007) (affirming dismissal of conspiracy claims where plaintiffs "failed to allege a key element of conspiracy—that there was an agreement to commit an unlawful act"). In this same vein, the alleged overt acts Dr. Lowry appears to claim form the basis for his civil

conspiracy claim are the same scheduling, workload, and PTO decisions that form the basis of the tortious-interference and IIED claims. *See* Am. Compl. ¶¶ 229–30. Those decisions are quintessential supervisory activities, not facts showing an unlawful agreement or an overt act in furtherance of a conspiracy. Dr. Lowry therefore cannot convert ordinary employment-management allegations into a civil conspiracy.

Finally, Dr. Lowry's conspiracy claim is barred by the intracorporate conspiracy doctrine. Under this doctrine, a civil conspiracy claim cannot succeed where the only alleged conspirators are a corporation and its officers or employees acting within the scope of their employment, because "the actions of corporate agents, acting within the scope of their employment, are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016); *see also Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3d DCA 2000) (holding that "neither an agent nor an employee can conspire with his or her corporate principal or employer"). Here, the only alleged conspirators are Dr. Wearden and Dr. Baker—both Nemours employees—and every allegedly conspiratorial act involves quintessential supervisory functions: scheduling, workload allocation, and PTO decisions. Am. Compl. ¶ 230.

These are precisely the type of employment decisions that fall within the scope of Dr. Wearden and Dr. Baker's corporate duties, not conduct undertaken for independent personal gain. *See Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290–91 (M.D. Fla. 2009) (dismissing civil conspiracy claim at pleading stage against company's president and office manager because the alleged conspirators were employees of same corporate entity acting within scope of their employment).

The "personal stake" exception to the doctrine of intracorporate conspiracy does not apply in this case. That limited exception requires the agent to have "a personal stake in the activities that are separate and distinct from the corporation's interest." *HRCC*, 302 F. Supp. 3d at 1325. Courts have consistently held that this exception "requires more than some incidental personal benefit" and applies "only where corporate employees are shown to have been motivated solely by personal bias." *Id.* at 1326. Personal animosity alone is insufficient: "[P]ersonal animosity . . . cannot of itself constitute the 'stake.'" *On–Site Dev. Corp. v. Riley*, 564 So. 2d 201, 204 (Fla. 5th DCA 1990). Dr. Lowry's allegations that Dr. Wearden and Dr. Baker acted with "personal animus" or to "suppress patient-safety criticism" do not establish any economic stake independent from Nemours' interests. *See* Am. Compl. ¶¶ 105–06, 213. The conspiracy claim is therefore barred. *See Nationwide Mut. Co.*, 657 F.

Supp. 2d 1279, 1290–91 (M.D. Fla. 2009) (dismissing civil conspiracy claim at pleading stage when complaint failed to allege any personal stake independent from corporation's interests). Accordingly, Count XV must be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Dr. Wearden respectfully requests that this Court grant his Motion in full and dismiss Counts XIII, XV, and XVI of the Amended Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: September 17, 2026 Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Mary Caroline Cravatta*

Larry S. Perlman
Florida Bar No. 91934
lperlman@foley.com
dmilian@foley.com
90 Park Avenue
New York, NY 10016
Telephone: (305) 482-8400

Mary Caroline Cravatta
Florida Bar No. 125712
mcravatta@foley.com
avargas@foley.com
301 E. Pine Street
Orlando, FL 32801
Telephone: (407) 423-7656

Angelique K. Howard
Florida Bar No. 1050723
akhoward@foley.com
avwilliams@foley.com
1 Independent Drive, Suite 1300
Jacksonville, Florida 32202
Telephone: (904) 359-8703

**ATTORNEYS FOR DEFENDANT DR. PETER D. WEARDEN, M.D., PH.D.**

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I conferred with counsel for Plaintiff regarding the relief requested in the foregoing motion via telephonic conference on September 14, 2026. Plaintiff opposes the relief requested.

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT DR. PETER D. WEARDEN, M.D., Ph.D.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on September 17, 2026, a copy of the foregoing was served on all counsel of record, as identified below:

Ciera L. Lipps
652 Nina Drive
St. Petersburg, FL 33715
(727) 500-1076
ciera@eazlaw.com

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT DR. PETER D. WEARDEN, M.D., Ph.D.**