**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ADAM LOWRY, M.D.,**

*Plaintiff*,

v. Case No. 6:26-cv-00919

**THE NEMOURS FOUNDATION**,
A Florida Not-for-Profit Corporation d/b/a
**NEMOURS CHILDREN'S HOSPITAL, FLORIDA; PETER D. WEARDEN, M.D., Ph.D.,** individually;
and **KIMBERLY N. BAKER, D.O., *individually*,**

*Defendants*.
_______________________________________________/

**DEFENDANT DR. BAKER'S MOTION TO DISMISS COUNTS XIV, XV, AND XVI OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant, KIMBERLY N. BAKER, D.O. ("Dr. Baker"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files her Motion to Dismiss Counts XIV, XV, and XVI (the "Dr. Baker Counts") of the Amended Complaint (ECF No. 17) filed in this action by Plaintiff, ADAM LOWRY, M.D. ("Dr. Lowry"). For the reasons stated herein, the Counts filed against Dr. Baker should be dismissed in full and with prejudice.

## INTRODUCTION

In his Amended Complaint (ECF No. 17), Dr. Lowry attempts to shoehorn his generalized frustrations with his employment as a physician

with Defendant, The Nemours Foundation ("Nemours"), into seventeen (17) different causes of action; three of which are directed at Dr. Baker in her individual capacity: Count XIV (Tortious Interference with Business Relationship); Count XV (Intentional Infliction of Emotional Distress), which is asserted against all Defendants; and Count XVI (Civil Conspiracy), which is asserted against Dr. Peter D. Wearden, M.D., Ph.D. ("Dr. Wearden") and Defendant, Dr. Baker.

Dr. Lowry's claims against Dr. Baker suffer from incurable deficiencies and fail to state a claim upon which relief can be granted. Specifically, Dr. Lowry's reliance on impermissible legal conclusions, vague allegations, and formulaic recitations of elements fails to satisfy the plausibility standards required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Because all of the claims filed against Dr. Baker are essentially the *same* as those against Nemours and Dr. Wearden, Dr. Baker incorporates by reference the arguments set forth in Nemours's Motion to Dismiss (ECF No. 25) and the Motion to Dismiss filed by Dr. Wearden on September 17, 2026 (ECF No. 32), where applicable. For these reasons, and as further articulated below, Dr. Baker respectfully requests that this Court dismiss Counts XIV, XV, and XVI with prejudice.

## DR. LOWRY'S ALLEGATIONS[1]

### I. Allegations Regarding Dr. Lowry's Employment And Dr. Baker's Role At Nemours

1. Dr. Lowry is a physician who worked and resided in Florida during the time period relevant to his Amended Complaint. Am. Compl. ¶ 24.

2. Nemours is a not-for-profit corporation that operates a hospital—Nemours Children's Hospital—in Orlando, Florida. Am. Compl. ¶ 27.

3. Dr. Lowry worked as a Pediatric Cardiac Intensivist and Cardiac Intensive Care Physician at Nemours from September 29, 2017, until his resignation in May 2025. Am. Compl. ¶¶ 2–3. During this time, he also worked as the Medical Director of Clinical Informatics for the Nemours Cardiac Center and provided cardiac intensive care to pediatric patients, including those with congenital cardiac disease. Am. Compl. ¶¶ 26, 34, 40.

4. Dr. Lowry alleges that Dr. Baker served in leadership roles within the Pediatric Cardiac Critical Care service line, including roles involving physician scheduling, workload allocation, paid time off ("PTO") practices, backup-shift assignments, and implementation of management

[1] Solely for the purpose of this Motion, Dr. Baker assumes the truth of Dr. Lowry's factual allegations (but not mere conclusions), as required under the Federal Rules of Civil Procedure.

directives affecting Dr. Lowry and other physicians employed in the cardiac critical care program. Am. Compl. ¶ 32.

## II. Allegations Regarding The "Governing" Alleged Written Contract Documents

5. Dr. Lowry claims that his compensation and work obligations, PTO, and reimbursement of professional expenses were "governed" by: (1) a May 5, 2017 employment offer (the "Employment Offer") (attached as Exhibit A to the Original Complaint); (2) a December 24, 2020 compensation memorandum (the "Compensation Memo") (attached as Exhibit B to the Original Complaint); and (3) a December 27, 2020 Memorandum of Understanding (the "MOU") (attached as Exhibit B to the Original Complaint). Am. Compl. ¶ 5.

6. The Employment Offer established a base salary of $270,000.00, benefits, and eligibility for incentive bonuses. Am. Compl. ¶ 41; Compl. at Ex. A.

7. The Employment Offer expressly noted that Dr. Lowry was employed at-will, and that his duties could change depending on funding and Nemours' needs. Am. Compl. ¶ 44; Compl. at Ex. A.

8. The Compensation Memo raised Dr. Lowry's base salary to $295,000.00, (effective January 1, 2021), with total compensation potential of up to $324,500.00. Am. Compl. ¶¶ 57–58; Compl. at Ex. B.

9. The MOU documented a discussion amongst Dr. Lowry's department regarding the shift expectations for full-time physicians. Compl. at Ex. B. Dr. Wearden issued the MOU to Dr. Lowry on December 27, 2020. Compl. at Ex. B; Am. Compl. ¶¶ 59–62.

10. The MOU set forth "guidelines" applicable to shift scheduling for full-time physicians. It generally expected Dr. Lowry to cover a minimum of eleven shifts per month and addressed additional "moonlighting shifts," for which he would be paid at an agreed-upon rate. Compl. at Ex. B; Am. Compl. ¶¶ 62–66.

11. The Employment Offer, the Compensation Memo, and the MOU—the terms of which speak for themselves—do not refer to or otherwise address Dr. Lowry's entitlement to PTO, the reimbursement of professional expenses, "backup obligations," "standby work," or "off-the-clock" work. *See generally* Exs. A, B, C.

### III. Allegations Regarding Dr. Baker's Conduct Towards Dr. Lowry

12. Dr. Lowry alleges that Dr. Baker: (a) manipulated physician scheduling and workload assignments in a manner that systematically disadvantaged Dr. Lowry; (b) repeatedly denied, delayed, or frustrated Dr. Lowry's PTO requests; (c) assigned mandatory uncompensated backup obligations to Dr. Lowry; (d) retaliated against Dr. Lowry for raising

patient-safety concerns through adverse scheduling and workload decisions; (e) treated Dr. Lowry inequitably compared to other physicians regarding scheduling privileges, PTO utilization, and workload assignment; and (f) contributed to and maintained working conditions that were objectively intolerable and that caused Dr. Lowry's "constructive discharge". Am. Compl. ¶ 218.

13. Dr. Lowry further alleges that Dr. Baker's conduct was motivated by "personal interest" in maintaining preferential scheduling arrangements for herself and others, and in avoiding accountability for management practices that caused harm to Dr. Lowry. Am. Compl. ¶¶ 106, 219.

14. As to Count XV, Dr. Lowry alleges that Dr. Baker engaged in inequitable scheduling decisions, repeated denial or frustration of PTO requests, assignment of uncompensated mandatory backup obligations, and retaliatory treatment. Am. Compl. ¶ 223.

15. As to Count XVI, Dr. Lowry alleges on information and belief that Dr. Baker and Dr. Wearden agreed to engage in the foregoing conduct and identifies scheduling, workload, and PTO decisions as alleged overt acts. Am. Compl. ¶¶ 229–30.

16. Dr. Lowry alleges that the foregoing conduct caused economic

and non-economic damages and contributed to his resignation. Am. Compl. ¶¶ 223, 226.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint on its face. *Johnson v. Fleet Fin. Inc.*, 785 F. Supp. 1003, 1005 (S.D. Ga. 1992). "When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed" and must accept all well-pleaded factual allegations as true. *McArdle v. City of Ocala*, 418 F. Supp. 3d 1004, 1006 (M.D. Fla. 2019) (citing *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Moreover, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557) (stating that a complaint does not suffice where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). To this end, "the Court may dismiss a claim when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," or when a plaintiff's well-pleaded factual allegations, taken as true, fail to establish entitlement to relief. *Conyers v. Ayers*, 5:22-cv-115, 2023 WL 5533504, at *1 (M.D. Fla. July 20, 2023) (internal quotations omitted).

## MEMORANDUM OF LAW

### I. Count XIV: Dr. Lowry's Tortious Interference With Business Relationship Claim Must Be Dismissed.

Dr. Lowry's tortious interference claim is legally deficient and must be dismissed for three reasons: (1) Dr. Lowry's Amended Complaint confirms that Dr. Baker (a member of Nemours leadership within the Pediatric Cardiac Critical Care service line) was not a stranger to the alleged business relationship at issue and acted in Nemours' best interests with respect to Dr. Lowry and (2) Dr. Lowry does not allege that Dr. Baker engaged in conduct directed to Nemours that caused Nemours to breach or terminate any alleged business relationship with Dr. Lowry.

To state a claim for tortious interference with a business relationship under Florida law, a plaintiff must plead facts establishing: (1) the existence of a contract or business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff resulting from the interference. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). Critically, "[f]or the interference to be unjustified, the interfering defendant must be a third party, a ***stranger*** to the business relationship." *Id.* (emphasis added). This so-called "'privilege to interfere' enjoyed by an officer or employee of a contracting party" is destroyed where "an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." *Id.*; *see also Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981).

### A. Dr. Baker Was Not A Stranger To The Alleged Business Relationship And Acted In Nemours' Best Interests.

The Court should dismiss Dr. Lowry's tortious interference with a business relationship claim against Dr. Baker because Dr. Lowry's own allegations show that Dr. Baker was not a stranger to Dr. Lowry's business

relationship with Nemours, but instead was a member of Nemours leadership within the Pediatric Cardiac Critical Care service line and employed by Nemours. *See Salit*, 742 So. 2d at 386; *see also Buckner*, 403 So. 2d at 1028 (stating that "a cause of action for wrongful interference with a business relationship is recognized only when the interference is by one who is not a party to that relationship"); Am. Compl. ¶ 32. As a member of Nemours leadership, Dr. Baker enjoyed a "privilege to interfere" unless she acted "solely with ulterior purposes, without an honest belief that her actions would benefit the employer," and her conduct concerning the business relationship was not in Nemours' best interest. *Salit*, 742 So. 2d at 386.

Dr. Lowry alleges that Dr. Baker's conduct was motivated by personal interest in maintaining preferential scheduling arrangements for herself and others, and in avoiding accountability for management practices that caused harm to Dr. Lowry. Am. Compl. ¶¶ 106, 219. Yet, Dr. Lowry pleads no ultimate facts in support of these allegations, alleging instead only in conclusory fashion that Dr. Baker's "conduct was not undertaken in the bona fide exercise of any proper corporate authority or in furtherance of any legitimate business interest of Nemours" and was motivated by "personal preferences regarding scheduling and workload assignments." *See* Am.

Compl. ¶ 219 (alleging supervisory conduct without facts showing that Dr. Baker acted outside Nemours' interests or without an honest belief her actions would benefit Nemours). These allegations are conclusory and do nothing more than track the legal standard.

Conversely, Dr. Lowry's other allegations show affirmatively that Dr. Baker acted ***without*** ulterior purpose—i.e., within the scope of her legitimate corporate authority —and in Nemours' best interests. First, Dr. Lowry alleges that at the time of the relevant events, Dr. Baker was an employee of Nemours who served in leadership roles, including physician scheduling, workload allocation, PTO practices, backup-shift assignments, and implementation of management directives affecting Dr. Lowry and other physicians employed in the cardiac critical care program. Am. Compl. ¶ 32. Second, the conduct Dr. Lowry challenges—scheduling, workload, physician coverage, compensation, and staffing decisions—are quintessential supervisory activities within the Cardiac Center's legitimate corporate interests. These allegations underscore that Dr. Baker's actions: (a) were based not on "ulterior motives" but on Dr. Baker's role as a member of Nemours' leadership within the Pediatric Cardiac Critical Care service line; and (b) benefited Nemours and were in its best interests.

In support of his claim against Dr. Baker, Dr. Lowry relies upon *Sloan v.*

*Sax*, 505 So. 2d 526 (Fla. 3d DCA 1987), but *Sloan* does not support his position. *See* Am. Compl. ¶219. *Sloan* involved an interference with contractual relationship claim against a corporate employee, and the court held that an employee may be liable for such interference where he acts "without an honest belief that his action will benefit his employer." *Id.* at 528. Critically, the court noted that "the privilege afforded an agent who . . . gives 'honest advice' that it is in his principal's best interest to breach an existing relationship" remains available unless "the agent acts solely with ulterior purposes and the advice is not in the principal's best interest." *Id.* at 527 (quoting *Scussel v. Balter*, 386 So. 2d 1227, 1228 (Fla. 3d DCA 1980)). Here, as set forth above, the conduct Dr. Lowry challenges (*i.e.*, scheduling, workload, physician coverage, compensation, and staffing decisions) are quintessential supervisory activities that fall squarely within Dr. Baker's authority as a member of Nemours' leadership. Dr. Lowry's conclusory allegations that Dr. Baker acted with personal interest in maintaining preferential scheduling arrangements for herself and others, and in avoiding accountability for management practices that caused harm to Dr. Lowry, fail to plead specific facts showing that Dr. Baker acted wholly outside the scope of her corporate authority or that her actions were entirely devoid of any business justification. Accordingly, *Sloan* and its progeny support dismissal, not survival, of Count XIV.

### B. Dr. Lowry Does Not Allege That Dr. Baker Directed Conduct To Nemours Causing Nemours to Breach Or Terminate Its Business Relationship with Dr. Lowry.

Count XIV also fails for the independent reason that Dr. Lowry alleges no interference from Dr. Baker directed to Nemours and no breach, termination, or other disruption of the alleged business relationship by Nemours. Under Florida law, the tort of interference with a business relationship requires that the defendant's alleged conduct be directed to a party to the relationship and induce that party to terminate or otherwise disrupt the relationship to the detriment of the plaintiff. *See Fort Lauderdale Riverwalk Props., Inc. v. White*, 531 So. 2d 739, 740–41 (Fla. 4th DCA 1988) (reversing judgment for plaintiff where "there [wa]s no evidence in the record of any specific conduct by [defendant] that prevented the exercise of plaintiff's option rights" and "no breach by the seller, nor even any effort by [defendant] to induce such a breach"); *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) (holding that "the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship");*US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*, 767 F. Supp. 3d 1331, 1348–49 (M.D. Fla. 2025) (granting summary judgment for defendant where there was "simply no evidence that [defendant] intended to interfere" and "direct evidence that [defendant] was not the cause of the

termination"); *Farah v. Canada*, 740 So. 2d 560, 561–62 (Fla. 5th DCA 1999).

In the Amended Complaint, Dr. Lowry concedes that he resigned yet attempts to recast that resignation as having been "induced" by Dr. Baker—without alleging that Dr. Baker actually directed any conduct to Nemours or that Nemours terminated or otherwise disrupted Dr. Lowry's alleged business relationship. *See* Am. Compl. ¶¶ 218–19, 223. This pleading defect is fatal to Count XIV. *See Crawley-Kitzman v. Hernandez*, 324 So. 3d 968, 976 (Fla. 3d DCA 2021) (affirming dismissal of tortious interference claim where defendants' conduct was "unrelated to the Agreement between [plaintiff] and [the third party]"). Put differently, to state a claim for tortious interference with his business relationship, it is insufficient for Dr. Lowry to allege that Dr. Baker induced Dr. Lowry to resign. Instead, Dr. Lowry must allege that Dr. Baker ***induced Nemours*** to terminate or otherwise disrupt Dr. Lowry's business relationship with Nemours, which he cannot do.

Because Dr. Lowry does not allege that Dr. Baker directed any conduct to Nemours or that Nemours breached, terminated, or otherwise disrupted his business relationship with Nemours, nor can he, Count XIV fails for this independent reason. This defect is incurable. Dr. Lowry cannot

satisfy this element because Nemours never breached, terminated, or otherwise disrupted any business relationship with him—Dr. Lowry resigned. Accordingly, Count XIV must be dismissed with prejudice.

## II. Count XV: Dr. Lowry's Intentional Infliction of Emotional Distress Claim Must Be Dismissed.

Dr. Lowry also attempts to state a claim for Intentional Infliction of Emotional Distress ("IIED") against all Defendants. As a threshold matter, Count XV is a shotgun pleading that independently warrants dismissal. It lumps "all Defendants" together and incorporates all 108 preceding factual paragraphs—including allegations regarding contract breaches, wage claims, and whistleblower statutes—without specifying which conduct by which defendant gives rise to the IIED claim. Am. Compl. ¶¶ 221–26. The Eleventh Circuit has repeatedly held that such pleading fails to provide fair notice and warrants dismissal. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *Celestine v. Capital One*, 741 Fed. Appx. 712, 714 (11th Cir. 2018). This basis alone warrants dismissal of Count XV.

Even putting aside this defect, to establish a claim for IIED under Florida law, a plaintiff must demonstrate that: (1) the wrongdoer's conduct was intentional and reckless, meaning she intended her behavior when she knew or should have known that emotional distress would likely result; (2)

the conduct was outrageous, beyond all bounds of decency, atrocious, and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. 5th DCA 1995). Whether conduct is sufficiently outrageous is a question of law. *Hare v. Citrus World Inc.*, 39 F. Supp. 2d 1365, 1369 (M.D. Fla. 1999).

Florida law imposes a very high standard on IIED claims brought in the employment realm. *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1357 (M.D. Fla. 1999). Courts are generally unwilling to find employment-related conduct outrageous. *Hare*, 39 F. Supp. 2d at 1369; *Doe v. Bd. of Cty. Comm'rs, Palm Beach Cty., Fla.*, 815 F. Supp. 1448, 1450 n.3 (S.D. Fla. 1992). In order to be actionable, the workplace conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. 4th DCA 2007).

As to Dr. Baker, Dr. Lowry alleges that Dr. Baker engaged in inequitable scheduling decisions, repeated denial or frustration of PTO requests, assignment of uncompensated mandatory backup obligations, and retaliatory treatment. Am. Compl. ¶ 223. His broader allegations that Defendants retaliated against him, suppressed patient-safety concerns,

made inequitable scheduling decisions, imposed professional burdens, and engineered intolerable working conditions are conclusory and do not identify conduct approaching the required level of outrageousness. Am. Compl. ¶ 223. Even if true, allegations of inequitable scheduling decisions, repeated denial or frustration of PTO requests, assignment of uncompensated mandatory backup obligations, and retaliatory treatment do not rise to the level of outrageousness required for IIED. *See Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1296 (M.D. Fla. 2006) (racial slurs and unjustified delays insufficient); *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (racial slurs, threats of termination, dangerous assignments, and schedule changes insufficient); *Mundy v. S. Bell Tel. & Tel. Co.*, 676 F.2d 503, 504 (11th Cir. 1982) (career threats, unfavorable assignments, unfair evaluations, and denied expense reimbursement insufficient); *Lay v. Roux Labs., Inc.*, 379 So. 2d 451 (Fla. 1st DCA 1980) (job threats, humiliating language, and verbal attacks insufficient). Count XV should therefore be dismissed with prejudice as to Dr. Baker.

## III. Count XVI: Dr. Lowry's Civil Conspiracy Claim Must Be Dismissed.

Finally, Dr. Lowry's claim for civil conspiracy is legally deficient and must be dismissed for three reasons: (1) he identifies no separate actionable

tort to underlie his claim; (2) he alleges no facts to create a plausible inference that Drs. Baker and Wearden agreed to commit some unlawful act; and (3) his claim is barred by the intracorporate conspiracy doctrine.

Under Florida law, civil conspiracy requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the acts done under the conspiracy. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Civil conspiracy is not an independent tort, however; instead, it requires an actionable underlying tort. *Raimi*, 702 So. 2d at 1284; *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019).[2] Because Dr. Lowry's tortious-interference and IIED claims ultimately fail for the reasons set forth above, these torts cannot form the basis for his civil-conspiracy claim. Additionally, Dr. Lowry's FLSA retaliation claim is directed only at Nemours, not at Dr. Baker individually; thus this statutory employment

[2] Dr. Lowry cites *Tejer*a and *Martine*z in support of his civil-conspiracy claim. Am. Compl. ¶ 228. But both cases actually support dismissal. *See Tejer*a, 271 So. 3d at 103 (holding that "[t]here is no freestanding cause of action in Florida for 'civil conspiracy'" and that a plaintiff "must allege an underlying independent tort"); *Am. United Life Ins. Co. v. Martine*z, 480 F.3d 1043, 1055, 1067-68 (11th Cir. 2007) (affirming dismissal of civil-conspiracy claims where plaintiffs failed to allege "a key element of conspiracy-that there was an agreement to commit an unlawful act" and failed to plead fraud with specificity). Thus, these cases serve only to expose the deficiencies in his own Amended Complaint that warrant dismissal now.

claim cannot be bootstrapped into a common-law tort claim against individual supervisors. *See Poole v. City of Plantation*, No. 05-61698, 2006 WL 8432490, at *3 (S.D. Fla. May 16, 2006) (holding that civil relief under the FLSA anti-retaliation provision is available only against employers, not individual supervisors in their personal capacities). For this reason, Dr. Lowry's claim for civil conspiracy cannot survive dismissal.

In any event, Dr. Lowry's allegations at paragraph 229 regarding Dr. Baker's and Dr. Wearden's agreement "to engage in coordinated conduct directed at Dr. Lowry" are entirely conclusory and speculative. Pleading on "information and belief," he does not identify any specific agreement, communication, meeting, or other facts showing a meeting of the minds between Dr. Baker and Dr. Wearden. Such "naked assertions devoid of further factual enhancement" do not satisfy *Twombly*, 550 U.S. at 557, or *Iqbal*, 556 U.S. at 678. *See also Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1055 (11th Cir. 2007) (affirming dismissal of conspiracy claims where plaintiffs "failed to allege a key element of conspiracy—that there was an agreement to commit an unlawful act"). In this same vein, the alleged overt acts Dr. Lowry appears to claim form the basis for his civil conspiracy claim are the same scheduling, workload, and PTO decisions that form the basis of the tortious-interference and IIED claims. *See* Am.

Compl. ¶¶ 229–30. Those decisions are quintessential supervisory activities, not facts showing an unlawful agreement or an overt act in furtherance of a conspiracy. Dr. Lowry therefore cannot convert ordinary employment-management allegations into a civil conspiracy.

Finally, Dr. Lowry's conspiracy claim is barred by the intracorporate conspiracy doctrine. Under this doctrine, a civil conspiracy claim cannot succeed where the only alleged conspirators are a corporation and its officers or employees acting within the scope of their employment, because "the actions of corporate agents, acting within the scope of their employment, are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016); *see also Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3d DCA 2000) (holding that "neither an agent nor an employee can conspire with his or her corporate principal or employer"). Here, the only alleged conspirators are Dr. Baker and Dr. Wearden—both Nemours employees—and every allegedly conspiratorial act involves quintessential supervisory functions: scheduling, workload allocation, and PTO decisions. Am. Compl. ¶ 230. These are precisely the type of employment decisions that fall within the scope of Dr. Wearden and Dr. Baker's corporate duties, not conduct

undertaken for independent personal gain. *See Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290–91 (M.D. Fla. 2009) (dismissing civil conspiracy claim at pleading stage against company's president and office manager because the alleged conspirators were employees of same corporate entity acting within scope of their employment).

The "personal stake" exception to the doctrine of intracorporate conspiracy does not apply in this case. That limited exception requires the agent to have "a personal stake in the activities that are separate and distinct from the corporation's interest." *HRCC*, 302 F. Supp. 3d at 1325. Courts have consistently held that this exception "requires more than some incidental personal benefit" and applies "only where corporate employees are shown to have been motivated solely by personal bias." *Id.* at 1326. Personal animosity alone is insufficient: "[P]ersonal animosity . . . cannot of itself constitute the 'stake.'" *On–Site Dev. Corp. v. Riley*, 564 So. 2d 201, 204 (Fla. 5th DCA 1990). Dr. Lowry's allegations that Dr. Baker acted to maintain preferential scheduling arrangements for herself and others and to avoid accountability for management practices, motivated by "personal preferences," that caused harm to Dr. Lowry do not establish any economic stake independent from Nemours' interests. *See* Am. Compl. ¶¶ 106, 219. The conspiracy claim is therefore barred. *See Nationwide Mut. Co.*, 657 F. Supp. 2d 1279, 1290–91 (M.D. Fla. 2009)

(dismissing civil conspiracy claim at pleading stage when complaint failed to allege any personal stake independent from corporation's interests). Accordingly, Count XVI must be dismissed with prejudice.

**CONCLUSION**

For the reasons stated above, Dr. Baker respectfully requests that this Court grant her Motion in full and dismiss Counts XIV, XV, and XVI of the Amended Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: October 21, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ Mary Caroline Cravatta*

Larry S. Perlman
Florida Bar No. 91934
lperlman@foley.com
dmilian@foley.com
90 Park Avenue
New York, NY 10016
Telephone: (305) 482-8400

Mary Caroline Cravatta
Florida Bar No. 125712
mcravatta@foley.com
avargas@foley.com
301 E. Pine Street
Orlando, FL 32801
Telephone: (407) 423-7656

Angelique K. Howard
Florida Bar No. 1050723

akhoward@foley.com
avwilliams@foley.com
1 Independent Drive, Suite 1300
Jacksonville, Florida 32202
Telephone: (904) 359-8703

**ATTORNEYS FOR DEFENDANT DR. KIMBERLY N. BAKER, D.O.**

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I conferred with counsel for Plaintiff regarding the relief requested in the foregoing motion via telephonic conference on October 19, 2026. Plaintiff opposes the relief requested.

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT DR. KIMBERLY N. BAKER, D.O.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on October 21, 2026, a copy of the foregoing was electronically filed via CM/ECF, which will effect service on all counsel of record identified below:

Ciera L. Lipps
652 Nina Drive
St. Petersburg, FL 33715
(727) 500-1076
ciera@eazlaw.com
allyson@eazlaw.com
teamliz@eazlaw.com
teamliz@recap.email

*/s/ Mary Caroline Cravatta*
**ATTORNEY FOR DEFENDANT DR. KIMBERLY N. BAKER, D.O.**